United States District Court
Southern District of Texas
**ENTERED**
February 03, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TRANSAMERICA ANNUITY SERVICE CORPORATION, | § § § |
| Plaintiff, | § § |
| VS. | § Civ. A. H-16-1426 |
| | § |
| SYMETRA LIFE INSURANCE CO., A.M.Y. PROPERTY & CASUALTY INSURANCE COMPANY, FINSERV CASUALTY CORP., and LIQUIDATING MARKETING, LTD. f/k/a RAPID SETTLEMENTS, LTD., | § § § § § § § |
| Defendants. | § |

**OPINION AND ORDER**

Pending before the Court, in the above referenced, complex, statutory interpleader under 28 U.S.C. § 1335, is Plaintiff and allegedly disinterested stakeholder Transamerica Annuity Service Corporations's ("Transamerica's") motion for partial summary judgment (instruments #9 and 10). Specifically, Transamerica seeks (1) an order granting it leave to deposit the current and future payments of structured settlement funds in the Court's registry to be held in an interest-bearing account for future disbursement according to the judgment of this Court, (2) an order enjoining the Claimants and anyone acting directly or indirectly on their behalf from commencing or prosecuting any proceeding in any State or federal court affecting the property, instrument or obligation involved in this interpleader action until further order of the Court, (3) a dismissal with prejudice and the discharge of Transamerica as a disinterested stakeholder, and (4) an award of fees and costs for its services rendered in prosecuting this interpleader.

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).  "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate

that there is a genuine issue of material fact for trial.
*National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40
F.3d 698, 712 (5th Cir. 1994).  "[A] complete failure of proof
concerning an essential element of the nonmoving party's case
renders all other facts immaterial." *Celotex*, 477 U.S. at 323.
The nonmovant may not rely merely on allegations, denials in a
pleading or unsubstantiated assertions that a fact issue exists,
but must set forth specific facts showing the existence of a
genuine issue of material fact concerning every element of its
cause(s) of action.  *Morris v. Covan World Wide Moving, Inc.*, 144
F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not
preclude summary judgment.  *National Ass'n of Gov't Employees v.
City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d
1322, 1325 (5th Cir. 1996).  "'[T]he mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment . . . .'"  *State
Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990),
*quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48
(1986).  "Nor is the 'mere scintilla of evidence' sufficient;
'there must be evidence on which the jury could reasonably find
for the plaintiff.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 252.
The Fifth Circuit requires the nonmovant to submit "'significant
probative evidence.'"  *Id., quoting In re Municipal Bond Reporting
Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing
Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d
194, 197 (5th Cir. 1986).  "If the evidence is merely colorable,

or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.,* 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991). The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13. The Court may not make credibility determinations. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

In an interpleader action, "'[a]lthough a factual dispute may exist to the rightful ownership of the fund, that

-4-

dispute does not preclude the granting of summary judgment in favor of the interpleader.   It is the very nature of an interpleader action that two or more parties claim rights to certain money or property.'"   *Underwriters Group, Inc. v. Clear Creek Independent School Dist.*, Civ. A. No. G-050334, 2006 WL 1852254, at *5 (S.D. Tex. June 30, 2006), *quoting Commerce Funding Corp. v. Southern Financial Bank*, 80 F. Supp. 2d 582, 285 (E.D. Va. 1999); *Allstate Assignment Co. v. Cevera*, Civ. A. No. 2:13-CV-096-AM-CW. 2014 WL 12496902, at *4 (W.D. Tex. Dec. 8, 2014), *report and recommendation adopted*, Civ. A. No. DR-13-cv-096-AM/CW 2015 WL 1170561 (W.D. Tex. Mar. 23, 2015).

### Statutory Interpleader

Title 28 U.S.C. § 1335 provides a district court with jurisdiction over an action in interpleader if (1) the plaintiff-stakeholder files an action regarding a single, identifiable fund in an amount of at least $500, (2) the plaintiff-stakeholder deposits the money in the district court's registry, (3) two or more parties claim entitlement to the funds, and (4) the claimants are minimally diverse, i.e., "diversity of citizenship between two or more claimants without regard to the circumstance that other rival claimants may be co-citizens." *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, LLC*, 782 F.3d 186, 192-93 (5th Cir. 2015), *cert. denied sub nom. Noatex Corp. v. Auto Parts Mfg. Mississippi, Inc.*, 136 S. Ct. 330 (2015); *Rhoades v. Casey*, 193 F.3d 592, 194 (5th Cir. 1999).   The claims of the adverse claimants need not have a common origin nor be identical, but may be adverse to, and independent of, each other.   *Auto Parts*, 782

F.3d at 193, *citing* 28 U.S.C. § 1334(b). Venue for a statutory interpleader is in any district where any claimant resides, and nationwide service of process is provided under 28 U.S.C. §§ 1335, 1397, 2361. *Id.* at 683.

In the first stage of the interpleader, the court determines whether these requirements have been met. If so, the litigation continues to determine the respective rights of the claimants to the fund. *Id.* "'[I]nterpleader jurisdiction is determined at the time suit is filed and subsequent events will not divest the court of jurisdiction.'" *Id.* at 194, *quoting Walker v. Pritzker*, 705 F.2d 942, 944 (7th Cir. 1983). "The first stage of interpleader only is concerned with whether multiple claims have been asserted, or may be asserted, against a disinterested stakeholder, not whether those claims have merit." *Id.* at 194.

As for the second stage of the interpleader, "'in the usual case at least one of the claims will be quite tenuous. . . . [N]othing more is implied than the claims alleged must meet a minimal threshold level of substantiality." *Id., citing* 7 Charles Alan Wright, *et al., Federal Practice & Proc.* § 1704 (3d ed. 2016 update). "'[E]ven the mere 'threat of multiple vexation by future litigation provides a sufficient basis for interpleader.''" *Id., quoting Title v. Enron*, 463 F.3d 410, 424 n.10 (5th Cir. 2006), *quoting Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983). The court must then determine the respective rights of the claimants and the priority of claims as of the time the interpleader action was commenced,

i.e., the date when the interpleader fund is deposited with the Court. *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143, 144 (2d Cir. 1988). If there is no genuine issue of material fact in the second stage, the interpleader may be resolved by summary judgment. *Rhoades*, 193 F.3d at 600. Otherwise, if the facts are disputed, each claimant must prove its entitlement to the funds by a preponderance of the evidence. *Id*.

Once the court determines that interpleader is available, the stakeholder may be discharged from any or all liability if Defendants do not oppose its motion for discharge and there is no longer a material controversy involving the stakeholder. *General Elec. Capital Assur. v. Van Norman*, 209 F. Supp. 2d 668, 670 (S.D. Tex. 2002). Under 28 U.S.C. § 2361, if the stakeholder is disinterested and the court finds interpleader is available, a "district court . . . may discharge the plaintiff from further liability . . . and make all appropriate orders to enforce its judgment." *Id.*; 7 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1714 (3d. 2001). "A disinterested stakeholder who is willing to tender the disputed funds 'is not obliged to be at the expense and risk of defending an action; but, on giving up the thing, . . . *he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense.*'" *Auto Parts*, 782 F.3d at 195, *citing Tittle*, 463 F.3d at 423, *quoting* 7 Wright, *et al.*, *Federal Practice and Proc.* § 1702.

Title 28 U.S.C. § 2361 authorizes the district court to enter an order restraining claimants "from instituting or

prosecuting any proceeding in any State or United States court affecting the property . . . involved in the interpleader action until further order of the court." *Auto Parts*, 782 F.3d at 195. The permanent injunction can restrain the interpleader defendants from prosecuting any action against the plaintiff that survives a final order of dismissal. *Auto Parts*, 782 F.3d at 191-92 (Title 28 U.S.C. § 2361 "authorizes a district court to issue a permanent injunction in an interpleader action when it discharges a plaintiff from further liability" thus "enabling 'the plaintiff-stakeholder to avoid the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing.'"). Imposing a temporary injunction merely for the "duration of the interpleader action is inconsistent with the interpleader's purpose of 'enabling the plaintiff-stakeholder to avoid the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing." *Id.* at 192, *quoting Hussain v. Bos. Old Colony Ins. Co.*, 311 F.3d 623, 631 (5th Cir. 2002), and *In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984)("[I]nterpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability."). "A permanent injunction is necessary to give meaning to the plaintiff's discharge and to encourage interpleader actions." *Auto Parts*, 782 F.3d at 192.

Nevertheless, in *State Farm Fire and Casualty Co. v. Tashire*, 386 U.S. 523, 535 (1967), the Supreme Court held that

while injunctive relief is available to enjoin actions affecting the fund, it is not available to restrain prosecution of actions outside the bounds of the interpleader proceeding, including actions against the insured. "The stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however, where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake." *Jackson National Life Ins. Co. v. Dobbins*, 2016 WL 4268770, at *2 (N.D. Tex. Aug. 15, 2016), *citing Tashire*, 386 U.S. at 535. Thus even if the Court enters a permanent injunction and dismisses Transamerica, the Claimants can still bring claims against Transamerica that are unrelated to the Chung Annuity Payments.

The district court has the authority and may use its discretion to decide to award reasonable attorneys' fees whenever it is fair and equitable to do so[1] and when the stakeholder is

---

[1] 7 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1719, quoting *Louisiana State Lottery Co. v. Clark*, 16 Fed. 20, 21 (C.C.E.D. La. 1983):

> In the case before us a mere stakeholder, without fault himself, in possession of a fund claimed entirely by contending parties, (but, as the result shows, with equal rights and claims thereto) brings the same into court, thereby promoting the litigation and securing the due application of the party. From the nature of the contending claims and the circumstances of the case he incurs expense and counsel fees in bringing the fund into court. There is no equity compelling him to bear these charges. On the contrary, the parties who have benefited thereby should bear them.

disinterested and is not in substantial controversy with one of the claimants. *Rhoades*, 196 F.3d at 603.

### Background Facts

After Harrison Chung and Elizabeth Chung suffered personal injuries, on or about January 31, 1986 they entered into a Settlement Agreement and Release with, among others, Transamerica Insurance Services to resolve claims related to their injuries. Under the Settlement Agreement, in exchange for release of liability in the underlying personal injury action, Harrison Chung was to receive, among other payments, $2,750.00 per month for life, with 30 years guaranteed starting on February 1, 1968 and with a payment increase of 3% per annum. To fund those payments, Transamerica Insurance Services assigned its liability to Transamerica on January 31, 1986 and Transamerica then purchased an annuity policy to fund the monthly payments to Harrison Chung.[2]

---

Generally the amount will reflect the nature of the attorney's work and the hours devoted to it. *Id.* Moreover, "in the usual case the fee will be relatively modest, inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a bond in its stead, service on the claimants, and the preparation of an order discharging the stakeholder. *Id.* Factors the court may consider include "1) whether the case is simple or involved; 2) whether the stakeholder performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefited the stakeholder; and 5) whether the claimants improperly protracted the proceedings." *Id.* Normally the costs and fees will be taxed against the losing claimant, although sometimes they are divided. *Id.*

[2] The context of an action like this one is explained by the Honorable Lee H. Rosenthal in *Symetra Life Ins. v. Rapid Settlements, Ltd.*, 657 F. Supp. 2d 795, 799-801 (S.D. Tex. 2009)(footnotes omitted)(opinion withdrawn on other grounds, Civ. A, No. H-05-3167, 2012 WL 12893482 (S.D. Tex. May 1, 2012)):

In the secondary market in structured settlements, tort claimants have settled their claims by entering into structured settlements paid through an annuity transfer some or all of their future-payment rights to a "factoring company" in exchange for a discounted lump sum paid in the present. The legislatures of forty-six states, including Texas, have enacted similar versions of a model statute to regulate these secondary-market transactions. These paternalistic statutes, frequently referred to as "structured settlement protection acts" ("SSPAs"), typically require the factoring company to disclose fully the effects of the proposed transfer and require a state-court judge to decide whether to approve the transfer as in the best interests of the annuitant. The purpose of the SSPAs is to protect annuitants from overreaching by factoring companies and to ensure that the decision to give up future-payment streams in exchange for a present discounted lump-sum payment is informed and voluntary.

The state SSPAs typically require a hearing and court approval of any "direct or indirect transfer of structured settlement payment rights" before the proposed transfer of such rights has any legal effect. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 141.004. "Structured settlement payment rights" are often defined as "rights to receive periodic payments under a structured settlement." *Id.* § 141.002(6). "Transfer" is defined as:

> any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration, except that the term does not include the creation or perfection of a security interest in structured settlement payment rights under a blanket security agreement entered in with an insured depository institution, in the absence of any action to redirect the structured settlement payments to the insured depository institution, or its agent or successor in interest, or

-11-

On or about March 26, 2007 Harrison Chung transferred the following portion of the periodic payments, called the "Chung Annuity Payments," to Defendant Rapid Settlements, Ltd. ("Rapid"), a citizen of Texas, which subsequently became known as Liquidating Marketing, Ltd.[3]:

> One hundred seven (107) monthly payments each in the amount of $6,624.97 out of $6,574.97, amount subject to a 3% annual increase each February 1st, beginning on February 1, 2016 through and including December 1, 2024, ultimately increasing to $8,405.65 out of $8,455.65 per month.

---

> to enforce the blanket security interest against the structured settlement payment rights.
>
> *Id.* § 141.002(8). . . .
>
> A court order approving a transfer under an SSPA typically must make "express findings" that:
>
> > (1) the transfer is in the best interests of the payee, taking into account the welfare and support of the payee's dependants;
> >
> > (2) the payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the advice in writing; and
> >
> > (3) the transfer does not contravene any applicable statute or an order of any court or other governmental authority.
>
> *See, e.g., id.* § 141.004.

[3] For simplicity and clarity, the Court refers to this entity as Rapid throughout this opinion,

The Superior Court in Snohomish County, Washington approved the transfer of the Chung Annuity Payments from Harrison Chung to Rapid on November 2, 2007 by an agreed order that included a representation and warranty by Rapid that "notwithstanding anything to the contrary in the Application or elsewhere, it has not transferred or assigned and shall not transfer or assign the Transferred Payments . . . to any other entity or person."  The order also stated that Rapid was the only person or entity with authority to change the address for where the payments were to be sent.

Subsequently on November 4, 2015, Symetra Life Insurance Company ("Symetra"), a citizen of Washington and Iowa,[4] obtained an award of attorney's fees in the amount of $881,299.30 and of costs in the amount of $19,998.33 against Rapid in Texas in *Symetra Life Ins. Co., et al. v. Rapid Settlements, Ltd.*, Civ. A. Nos. H-05-3167, H-06-2933, 2015 WL 6739022 (S.D. Tex.)(Rosenthal, J.).  On January 6, 2016 Symetra domesticated its judgment in the Superior Court of Washington for Benton County under Case No. 16-2-00030-1, appeal dismissed, 16-20075 (5th Cir. April 12, 2016).

Symetra represents that in a different action, pursuant to Symetra's request, the Sheriff of Snohomish County, Washington sold the Chung Annuity Payments to Symetra at a public auction on April 20, 2016 under a writ of execution issued in Cause No. 16-2-00030-1 in the Superior Court of Washington for Benton County and the *Sheriff's Bill of Sale on Personal Property* arising from it.

---

[4] Symetra Assigned Benefit Services Company is a citizen of Washington.

Symetra claims ownership of the Chung Annuity Payments and has demanded that Transamerica now make them to Symetra.

Symetra opposes granting Transamerica a permanent injunction enjoining it from commencing or prosecuting any suits affecting the Chung Annuity Payments because it would enjoin Symetra from continuing to prosecute its claims in the Snohomish County Court and the Fraudulent Transfer Litigation in this district before Judge Hittner, in which it has already suffered a loss of $1,000,000, a grave injustice which would unfairly prejudice Symetra and subject it to further injury or damage. Alternatively the Court could narrowly fashion an injunction to not bar its two suits nor enforcement of any judgment that the payments be payable to Symetra.

Two other parties, A.M.Y. Property & Casualty Insurance Corporation ("A.M.Y.") and FinServ Casualty Corporation ("FinServ"), both citizens of Anguilla, on April 15, 2016 claimed ownership of the Chung Annuity Payments pursuant to an April 7, 2016 U.C.C. foreclosure sale and demanded that Transamerica begin to make payments to them.

### Defendants' Responses to Transamerica's Motion

In its response (#11) and supplement (#15), Symetra states that it does not oppose Transamerica's request to deposit the Chung Annuity Payments in the registry nor Transamerica's discharge without prejudice[5] from this action and from any further

---

[5] Symetra explains the discharge should be without prejudice because Transamerica's duty to pay the annuity payments is ongoing until 2024.

liability to Symetra, FinServ, and A.M.Y., provided that Transamerica satisfies the requirements for an interpleader action, deposits all annuity payments that have become due since June 1, 2016 and that will become due during this litigation, and that Transamerica agrees to be bound by an any Final Order and/or Judgment of this Court ordering payment of the annuities from the date of the Final Order and/or Judgment though the date on which the final payment is due in December 2024.

Symetra does object to any injunctive relief barring it from filing or prosecuting any suits affecting the annuity payments because these payments are currently, in whole or in part, the subject of the two concurrent, pending suits brought by Symetra in this district in Texas and in the Superior Court of Snohomish County, Washington.  Injunctive relief would also bar enforcement of this Court's Final order and/or Judgment in the instant suit.

On March 24, 2016, Symetra with its affiliate, Symetra Assigned Benefits Services Company ("Symetra Assigned"), sued RSL and its owners and related entities for fraudulent transfers in H-16-791, *Symetra Life Insurance Company, et al. v. RSL-3B-IL, Ltd., et al.* ("The Fraudulent Transfer Litigation"),[6] presided over by Judge David Hittner.  Asking this Court to take judicial notice of that suit, Plaintiffs allege that Rapid transferred assets with a face value of more that $60 million to affiliated entities for no or nominal consideration to defeat the collection rights of

---

[6] First Amended Complaint, Ex. A.

Symetra and other creditors that held unsatisfied judgments against Rapid. Symetra and Symetra Assigned claim that the Chung Annuity Payments constitute a portion of these assets that were fraudulently transferred by Rapid to its affiliated entities. They also claim that FinServ and A.M.Y. are related to, and under the common control of the owners of, Rapid. See Ex. B, Certificate of Interested Persons in the Fraudulent Transfer Litigation.

Regarding the Washington state court case, by an agreed order entered on November 5, 2007 in Snohomish County Superior Court of Washington in Case No. 07-2-04430-1, Rapid was awarded certain rights to the Chung Annuity Payments based on the representations that Rapid made to the court and to the parties to that action that Rapid had not, and would not, transfer or assign the payments to any other entity or person. #10 at 4, ¶ 2, and at 12. Rapid also warranted its representations. #10 at 4, ¶ 2. The Snohomish court then ordered all payments to which Rapid was entitled would be paid to Rapid, and that Rapid would be the only person or entity entitled to change the address for the payments it was awarded. *Id.* at 14, ¶ 6. Moreover, such a transfer required written notification to Transamerica, but Transamerica did not receive such. At the Sheriff's public auction pursuant to a writ of execution, Symetra purchased and received any and all rights, title, and interest that Rapid had to the annuity payments at issue in this case.

Finally Symetra objects to an award of reasonable and necessary attorneys' fees and costs in so far as they might be

recovered from Symetra and/or from the annuity payments deposited
in the Court's registry.    Instead, any such award of fees and
costs should be paid by Liquidating Marketing, Ltd. f/k/a Rapid,
A.M.Y., and/or FinServ.

        In their response (#12), A.M.Y. and FinServ state that
they also do not oppose depositing the structured settlement
payment funds into the Court registry as that deposit is a
jurisdictional prerequisite for a statutory interpleader.    They
also do not object to summary judgment on the right to interplead,
but ask the Court to deny Transamerica's request for attorney's
fees.  Because Transamerica is a financial institution that files
interpleader actions as a regular event in its ordinary course of
business, it is a cost of doing business and in its self interest
to benefit from interpleader actions to avoid multiple liability.
*Century National Bank of San Angelo v. Jones (In re Jones)*, 61
B.R. 48, 53-54 (Bankr. N.D. Tex. 1986)("[B]anks and insurance
companies are to be distinguished from other stakeholders [because
for them] it is a cost of doing business and a matter of self
interest to use the salutary benefits of an interpleader action to
avoid multiple liability.  Moreover, fees should not be awarded
when the controversy surrounding the interplead fund is not
difficult to resolve."), *citing Prudential Prop. & Cas. Co. v.
Baton Rouge Bank & Trust*, 537 F. Supp. 1147, 1150 (M.D. Ga.
1982)("[A] number of courts have held that attorneys['] fees
should not be awarded to an insurance company in an interpleader
action where the claims to the fund are of the type that arise in
the ordinary course of business and are not difficult to

resolve."). A.M.Y. and FinServe argue that Transamerica has not provided any evidence that it filed this action outside of the normal course of its business as an insurance company, annuity owner, and obligor in a structured settlement. The complaint and the motion for partial summary judgment characterize this litigation as a simple matter of lien priority, and the American Rule that each party bears its own fees should control.

A.M.Y. and FinServe also object to issuance of a permanent injunction because they are engaged in related and ongoing litigation with Symetra and Symetra Annuity in this district.

### Transamerica's Reply (#14)

To Rapid's contention that Transamerica should not receive an award of fees because this interpleader is in the ordinary course of its business, Transamerica points to the twelve-year history and multiple cases involving this set of parties and a series of structured settlement transfers, initially arising when Symetra sued Rapid for tortious interference and injunctive relief in various Texas counties for using arbitration to obtain a transfer of future payment rights without state-court approval under SSPAs. These cases were eventually consolidated in a suit before Judge Rosenthal that was ultimately resolved in 2015 by a judgment for $901,297.63 in fees and costs in Symetra's favor, which Symetra domesticated in the Superior Court of Washington for Benton County, Case No. 16-2-00030-1 on January 6, 2016.

Next Symetra went to the Snohomish County Court, where, in an unrelated action, Rapid had obtained an order in 2007 allowing a transfer to Rapid of the Chung Annuity Payments that Transamerica owed in cause number 07-2-04430-1 in the Superior Court.   At Symetra's request, the Sheriff of Snohomish County, Washington sold the Chung Annuity Payments to Symetra under a writ of execution on April 20, 2016,  Symetra then proceeded to file a motion in the original Chung transfer case on May 12, 2016, trying to force Transamerica to redirect the Chung Annuity Payments directly to Symetra.  A.M.Y. and FinServe are not parties to that suit.  #10, Ex. 1.

On March 24, 2016 Symetra filed the Fraudulent Transfer Case, H-16-cv-791, *Symetra Life Insurance Company and Symetra Assigned Benefit Services Company v. RSL-3B-IL, Ltd., RSL-2012-1, LP, Liquidating Marketing, Ltd., Steward Feldman, Marla Matz Feldman, and IberiaBank, N.A.*, in the Southern District of Texas, alleging that Rapid and related companies fraudulently transferred unidentified annuity rights totaling $60 million.  Symetra admits that FinServ and A.M.Y. are not parties in that case either and would not be bound by any finding about Symetra's right to the fund.  While Symetra conclusorily asserts that the Chung Annuity Payments are part of the $60 million of annuity rights at issue, it has not submitted any evidence, nor referenced any evidence, in support of its claim.

Finally Defendants FinServ and A.M.Y., with other parties, sued Symetra, H-12-cv-2708, *RSL-3B-IL, Limited Partnership, FinServ Casualty Corp., and A.M.Y. Property &*

*Casualty Corporation v. Symetra Life Insurance Company and Symetra Assigned Benefits Services Company*, also in the Southern District of Texas regarding claims by A.M.Y. and FinServ to have a prior perfected security interest in certain assets, allegedly including the Chung Annuity Payments.   Both claim to have recently foreclosed on those payments.   Symetra is a party to this action, but Rapid is not.

The purpose of the instant interpleader is to protect Transamerica from contradictory decisions and/or having to fight multiple claimants on multiple fronts.   Symetra forced Transamerica to file this interpleader by filing its motion in the Snohomish County, Washington case to order Transamerica to redirect the Chung Annuity Payments to Symetra.   Transamerica has included all the claimants to the Chung Annuity Payments, and maintains that, as a disinterested stakeholder, Transamerica is entitled to have the dispute over entitlement to the fund limited to this interpleader.   Claimants here have all argued for an exception to a permanent injunction based on the numerous actions. While Symetra states that it does not anticipate Transamerica being made a party to these suits, #11 ¶ 19, such a statement does not protect Transamerica and ignores the fact that Symetra did include Transamerica in filing its motion to redirect payments in the Washington court proceeding.   #10, Ex. 1.

Symetra also argues that an injunction would be a "grave injustice to Symetra, would be unfairly prejudicial, and would subject Symetra to further injury and/or damage."   #11 at p.6. Rapid Defendants also assert they might be prejudiced if they are

enjoined from going forward in other litigation, but fail to explain how and do not even claim that the Chung Annuity Payments are at issue in other litigation.  The interpleader statute expressly contemplates that the dispute will be resolved in one court to protect the stakeholder.

Transamerica highlights the fact that except for the case in Snohomish County, there is no evidence that the Chung Annuity Payments are even involved in the other suits. Transamerica seeks resolution of the dispute over the Chung Annuity Payments in this case and an injunction enjoining claimants from involving it in any other case, including the other pending suits, as contemplated by the federal interpleader statute.

As for an award of fees and costs, Transamerica points out that Symetra gives no reason for its argument that the fees should be awarded only from the other claimants, not from Symetra. While Rapid, A.M.Y. and FinServe object to any recovery of fees based on the "ordinary course of business rule," they do not cite to any authority in the Fifth Circuit other than the *In re Jones* bankruptcy opinion, which relied on an Illinois case. Transamerica insists that neither the Fifth Circuit nor this Court has ever applied or even referred to that rule.  The Court's own research as not found any that apply the ordinary course of business rule to a request for fees and costs from stakeholder banks or insurance companies.  Instead, typically the Fifth Circuit awards disinterested stakeholders their attorneys' fees, even banks and insurance companies.  *See, e.g., James Talcott,*

*Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 468 (5th Cir. 1971)(awarding fees to a bank); *Southern Farm Bureau Life Ins. Co. v. Lusk*, Civ. A. No. 4:13-CV-847, 2014 WL 897812, at *4 (S.D. Tex. Mar. 6, 2014)(awarding fees to an insurance company in a case involving claims by competing beneficiaries).  The Court agrees. *See, e.g., Massachusetts Mutual Life Ins. Co. v. Sanders*, 787 F. Supp. 2d 628 (S.D. Tex. 2011)(awarding insurer/disinterested stakeholder, not in substantial controversy with one of the claimants, fees and costs from the policy proceeds for services in filing and investigating to determine which claimant was entitled to the policy proceeds); *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 751 (S.D. Tex. 2001)(same); *Jackson National Life Ins. Co. v. Dobbins*, Civ. A. No. 3:16-cv-0854-D, 2016 WL 4268770, at *4 (N.D. Tex. Aug. 15, 2016).  Moreover, insists Transamerica, the rule would not apply here because it was not a routine dispute for an annuity company or for the holder of a structured settlement annuity such as Transamerica.  Usually a typical and foreseeable dispute is between or among competing beneficiaries of the annuitant.  Here, however, the dispute is a complicated and unforeseeable contest in a number of different courts, between courts who purportedly foreclosed on their sister factoring company after it purchased a flow of annuity payments from the annuitant, and another annuity company asserting that it sold these annuity payments at a Sheriff's sale to enforce its judgment against the factoring company with which it had a separate, independent dispute.  *Chase Manhattan Bank v. Mandalay Shores Coop. Housing Ass'n, Inc. (In re Mandalay Shores Coop.*

-22-

*Housing Ass'n, Inc.),* 21 F.3d 380, 383 (11th Cir. 1993)(The normal-course-of-business rule applies in a typical interpleader where the costs are foreseeable and an insurance company can easily allocate the costs of these suits to its customers or a bank acting a the trustee of an estate may allocate costs where there is a reasonable probability that various claimants will contest ownership to the assets can plan for them as a regular course of business, and is therefore undeserving of a fee award).

Symetra erroneously argues that Transamerica should not be discharged with prejudice because it must still make future Chung Annuity Payments. A discharge with prejudice does not relieve Transamerica from the Court's previous order requiring it to make future payments into the court's registry, but only bars any future dispute with Transamerica regarding which of these claimants is entitled to the Chung Annuity Payments. While rare, Transamerica finds there is precedent for an order discharging in advance an interpleading party that is required to make future payments. *See Fried v. U.S.*, 141 F. Supp. 385, 387 (E.D.N.Y. 1956)("New York Life Insurance Company is directed to pay into the Registry of this Court all disability payments which have accrued to date under the aforementioned policies, and all future payments thereunder, as and when they shall accrue, all such deposits to be subject to the further order of this Court as to the disposition thereof. Upon such deposit New York Life Insurance Company shall be discharged from any further liability for the payment thereof."); *Powers v. Metro Life Ins. Co.*, 439 F.2d 605, 607 (D.C. Cir. 1971)(After a hearing on Powers'

opposition to a discharge of the appellant insurance company, the appellate court entered an order discharging the insurance company from any further liability to the claimants and awarded it an attorney's fees of $500 from the deposited funds, dismissed the action without costs as to the appellee, and provided for the continuation of the action between the interpleaded claimants).

## Court's Decision

Before Symetra had been served and appeared, this Court granted Transamerica's motion to permit deposit of interpleader funds as they become due (#13), but denied its motion for discharge, without prejudice to being reurged when appropriate. All the claimants have now appeared.  Having carefully reviewed the record and the applicable law, the Court concludes that Transamerica's motion for partial summary judgment should be granted for the reasons expressed below.

The Court concludes that Transamerica has properly brought the instant interpleader action.  There is a single fund of more than $500, comprised of past and future Chung Annuity Payments, with those that have been paid to Transamerica deposited in the Court's Registry, for which the multiple adverse claimants with minimal diverse citizenship[7] among them are competing.  *Auto Parts*, 782 F.3d at 192-93.  Therefore the Court has jurisdiction over this action.

---

[7] Transamerica is a citizen New Mexico and Iowa, while FinServe and A.M.Y. are citizens of Anguilla.  Rapid (and latter Liquidating Marketing are citizens of Texas.

Venue is proper pursuant to 28 U.S.C. § 1397 because Rapid/Liquid Marketing is a citizen of Texas with its principal place of business in Houston.

The Court agrees with Transamerica that, as a disinterested stakeholder, with no claim to the Chung Annuity Payments, it is entitled to a permanent injunction and dismissal with prejudice.  Transamerica has solved the problem of multiple suits, each involving some, but not all, claimants to the Payments, by successfully gathering them all in this interpleader action.  A permanent injunction in this suit to enjoin all other actions is the only way the Chung Annuity Payments can be preserved  until the rightful owner is determined in this action.

The Court also finds that Transamerica is entitled to an award of reasonable fees and costs for its services in preparing and filing this interpleader action.  The Court has considered various factors applied by the Fifth Circuit for determining the amounts of those awards here.  *See, e.g., New York Life Ins. & Annuity Corp. v. Cannatella*, 550 Fed. Appx. 211, 217 (5th Cir. Dec. 23, 2013)("The district court may take into account a number of factors when assessing whether attorney's fees are appropriate: '1) whether the case is simple or involved; 2) whether the stakeholder performed any unique services for the claimants or the court; 3) whether the stakeholder acted in good faith and with diligence; 4) whether the services rendered benefitted the stakeholder and 5) whether the claimants improperly protracted the proceedings.'"), *citing* 7 Charles Alan Wright, *et al., Federal Practice and Procedure* § 1719, at 688-89 (3d ed. 2001).  The Court

-25-

agrees with Transamerica that the claimants' filing suits in multiple courts without including all parties is what complicated this action and protracted this litigation beyond the already excessively protracted twelve years these parties have been fighting in court.    Transamerica was not even part of these actions until Symetra filed its motion in the original Chung transfer case for a court order to redirect the Chung Annuity Payments from Rapid to Symetra.  While Transamerica acted on good faith in filing the proper and appropriate interpleader action, the same cannot be said for the claimants who filed other kinds of suits without necessary parties in an attempt to gain control of the Chung Annuity payments as well as over other funds and delayed resolution of the parties' disputes.

Accordingly the Court concludes that Transamerica's motion for partial summary judgment should be granted, i.e., Transamerica should recover reasonable fees and costs and should be dismissed without prejudice.  First however, the Court

ORDERS that Transamerica shall file within twenty days an appropriate motion for fees and costs with supporting evidence. Claimants shall file responses within twenty days of Transamerica's filing.

SIGNED at Houston, Texas, this  3rd  day of  February ,
2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE