IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TRANSAMERICA ANNUITY SERVICE §
CORPORATION, §
　　　　　　　　　　　　　§
　　　　　Plaintiff, §
　　　　　　　　　　　　　§
VS. §　　　Civ. A. H-16-1426
　　　　　　　　　　　　　§
SYMETRA LIFE INSURANCE COMPANY,§
A.M.Y. PROPERTY & CASUALTY §
INSURANCE COMPANY, FINSERV §
CASUALTY CORP., AND LIQUIDATING§
MARKETING, LTD. F/K/A RAPID §
SETTLEMENTS, LTD., §
　　　　　　　　　　　　　§
　　　　　　　　　　　　　§
　　　　　Defendants. §

## OPINION AND ORDER

　　　　Pending before the Court in the above referenced, complex, statutory interpleader action[1] under 28 U.S.C. §§ 1335 and 2361, to interplead annuity payments originally payable to non-

---

[1] "'Statutory interpleader is proper when a (1) stakeholder has a single fund worth at least $500; (2) where two or more adverse claimants with diverse citizenship are competing for that fund; and (3) the stakeholder has deposited the fund in the Court's registry.'" *Jackson National Life Insurance Company v. Dobins*, iv. A. No. 3:16-CV-0854-D, 2016 WL 4268770, at *1 (N.D. Tex. Aug. 15, 2016), *quoting Fresh Am. Corp. v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 411, 414 (N.D. Tex. 2005). There are two stages to an interpleader: in the first stage the court determines whether these requirements have been met; if the first step is met, in the second, in which a discharged stakeholder has no role, the court determines the rights of the claimants. *Id.* at *2.
　　　　Regarding the diversity requirement, the claimants in interpleader need only be "minimally diverse" pursuant to 28 U.S.C. § 1335, i.e., a phrase "universally construed to require only . . . diversity between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 336 U.S. 523, 530 (1967).

party Harrison Chung ("Chung Annuity Payments"),[2] are, *inter alia*, the following motions: (1) discharged, disinterested stakeholder Plaintiff Transamerica Annuity Service Corporations's ("Transamerica's") application for attorneys' fees and costs (instrument #21) for services rendered in prosecuting this interpleader; and (2) Transamerica's motion to correct (#22) clerical error in Opinion and Order of February 3, 2017 (#20), to which no responses have been filed.

---

[2] Symetra summarizes the early procedural history as follows (#25 at p.2): The annuity funds were

> originally payable by Transmerica to non-party Harrison Chung, but subsequently transferred to Rapid Settlements LTD ("RSL") in 2007 by a court order out of the Snohomish County, Washington court. To satisfy a judgment of nearly $1 million obtained in this Court against RSL, Symetra domesticated the judgment in Washington and properly levied on the Chung Payments in a Sheriff's sale in Snohomish County.
>    2.    While the Sheriff's sale was pending, A.M.Y. Property & Casualty Insurance Company ("A.M.Y.") and FinServ Casualty Corp. ("FinServ"), parties related to RSL, entered into an alleged U.C.C. foreclosure sale of the Chung Payments and claimed ownership to them. Symetra and FinServ/A.M.Y. each demanded payment from Transamerica. Transamerica made no response to Symetra's demand, and Symetra filed a motion in the Snohomish County Court to enforce the Sheriff's levy against Transamerica.
>    3. On May 20, 2016, Transamerica filed this interpleader action. Symetra waived service of process. None of the Defendants/Claimants contested the deposit of the proceeds or the filing of the interpleader. . . .

The Court hereby incorporates by reference its previous Opinion and Order (#20), providing background facts and applying relevant law.

## I. Transamerica's Motion to Correct Clerical Error (#22)

The Court first addresses Transamerica's Federal Rule of Civil Procedure 60(a) motion to correct clerical error in its February 2, 2017 Opinion and Order (#20) granting Transamerica's motion for partial summary judgment. Transmerica identifies the error in that document as the inconsistency between the statement on page 25, "The Court agrees with Transamerica that, as a disinterested stakeholder, making no claim to the Chung Annuity Payments, it is entitled to a permanent injunction **with prejudice** [emphasis added]," and the statement on page 26, "Accordingly the Court concludes that Transamerica's motion for partial summary judgment should be granted, i.e., Transamerica should recover reasonable fees and costs and should be dismissed **without prejudice**."

### A. Standard of Review--Rule 60(a)

Rule 60(a) ("Corrections Based on Clerical Mistakes; Oversights and Omissions"), provides,

> The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

Rule 60(a) is restricted to "fixing clerical errors 'of the sort that a clerk or amanuensis might commit, mechanical in nature.'"

*Campbell Harrison & Dagley*, Civ. A. No. 3:12-CV-4599-L, 2015 WL 4587567, at *5 (N.D. Tex. July 30, 2015), *citing In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). "'A Rule 60(a) motion 'can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.'" *Rivera v. PNS Stores, Inc.,* 647 F.3d 188, 194 & n.15 (5th Cir. 2011)(*citing In re Galiardi*, 745 F. 2d 335, 337 (5th Cir. 1984), *quoting* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2854 (2d ed. 1977)), *cert. denied*, 565 U.S. 1259 (2012). For example, Rule 60(a) would allow the court to correct a judgment to modify a jury's damages award when the jury made a mathematic error in computing damages, but not to change the judgment, for instance to award specific performance along with monetary relief. *Id.* at 194.

In *Rivera* the Fifth Circuit concluded that "[i]nadvertently designating a dismissal as being 'without prejudice' instead of 'with prejudice' is the type of rote, typographical error of transcript that could be committed by a law clerk or a judicial assistant." *Rivera*, 647 F.3d at 193-94 It is not an error of judgment or legal reasoning . . . ." *Id.* at 194. It opined, "Our precedent lends strong support to the conclusion that Rule 60(a) allows a judgment's 'with prejudice' or 'without prejudice' denomination to be changed when the change comports with the intent conveyed by the substance of the district court's adjudication." *Id.* In *Rivera*, the court specifically determined that the dismissal was a clerical mistake, and without evidence to the contrary, there was no basis to discredit the court's

-4-

statement. *Id.* at 196-97. "A district court's authority under Rule 60(a) is also limited to making corrections that are consistent with the court's intent at the time it entered the [order]. . . . We ascertain the district court's intent . . . by reviewing other relevant documents that were produced contemporaneously with the [order], such as a memorandum opinion or order, findings of act and conclusions of law, the transcript of a hearing, or a signed stipulation of the parties." *Id.* at 195. When "[t]he reasoning of the memorandum order indicates that a correction is substantive, not clerical," the modification is not authorized by Rule 60(a). *Id.*

### B.  *Application of the Law*

In its previous Opinion and Order (#20) this Court intended to dismiss the stakeholder with prejudice and finds that the contradiction in the two statements raised by Transamerica was a clerical error.  In its previous Opinion and Order, the Court found that the interpleader action was appropriate, given the conflicting claims to the *res* and that the stakeholder was disinterested (i.e., it had no interest in the annuity funds).  A dismissal with prejudice is logically consistent with the Court's rationale in discharging the stakeholder here.  The whole point of a interpleader is "to protect a stakeholder from the burden of dealing with multiple claims against the same fund and to relieve the stakeholder from the necessity (and the risk) of identifying which claims are meritorious."  *Metropolitan Life Ins. Co. v. Bell*, No. 6:14-cv-473-Orl-22TBS, 2014 WL 8021562, at *3 (M.D. Fla. Oct. 9, 2014)(*citing Perlman v. Fidelity Brokerage Services, LLC*,

-5-

932 F. Supp. 2d 397, 415 2013).[3] Moreover the dismissal of the stakeholder from liability and, in a statutory interpleader, the entry of a permanent injunction under 28 U.S.C. § 2361, enjoining the claimants in this action "from instituting or prosecuting any proceeding in any State or United States court affecting the property . . . involved in the interpleader action" against the stakeholder, are to protect the stakeholder from the burden of unnecessary current and future litigation and/or risk of loss, once the stakeholder has established the interpleader and deposited the disputed funds in the registry of the Court, from further suit brought by the same competing claimants to the fund based on the

---

[3] As explained in *Equitable Life Assurance Soc'y v. Jones*, 679 F.2d 356, 358 n.2 (4th Cir. 1982), citations omitted,

> The principle of interpleader is that where two persons are engaged in a dispute, and that which is to be the fruit of the dispute is in the hands of a third party, who is willing to give it up according to the result of the dispute, then . . . that third person . . . is not to be obliged to be at the expense and risk of defending an action; but on giving up the thing . . ., he is to be relieved, and the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense.

"The appropriate resolution of the interpleader action is to absolve the stakeholder from the threat of multiple liability by determining which of the claimants is entitled to the stake." *Id.*, *citing* 7 Wright and Miller, *Federal Practice and Procedure* § 1702, p. 362 (1972). At this stage in the instant interpleader, following the discharge of the stakeholder, the dispute over the interpleader fund is between Defendant Symetra Live Insurance Co. ("Symetra") and Defendants (a/k/a "Interpleader Claimants") A.M.Y. Property & Casualty Company ("A.M.Y."), FinServ Casualty Corp. ("FinServ"), and Liquidation Marketing Ltd.("LM")(f/k/a Rapid Settlements, Ltd.)("Rapid").

same facts that are in this interpleader action.[4]  Here, as the Court has noted previously, the situation here is much more complicated and much riskier for the stakeholder because the interpleader serves to protect Transamerica from contradictory decisions from other courts and from having to fight multiple claimants on multiple fronts.  Furthermore "[i]mposing a temporary injunction merely for the 'duration of the interpleader action is inconsistent with the interpleader's purpose of 'enabling the plaintiff-stakeholder to avoid the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability," while the interpleader action determines the claimant(s) who actually is (are) entitled to the Chung Annuity Payments in dispute here.  The same inconsistency would be true if the Court had discharged the stakeholder without prejudice.  A dismissal with prejudice protects Transamerica permanently.

Thus the Court, pursuant to Rule 60(a), grants Transamerica's motion to correct clerical error in order (#22) and clarifies that its decision to discharge stakeholder Transamerica was intended to be and was and is *with* prejudice.

## II.  Transamerica's Application for Fees and Costs (#21)

On February 3, 2017, the Court, in granting Transamerica's motion for partial summary judgment, found that Transamerica was a disinterested stakeholder entitled to recover reasonable fees and costs, and ordered Transamerica to file an appropriate application with supporting evidence.

---

[4] As opined by this Court in its previous Opinion and Order.

*A. Applicable Law*

In a successful[5] interpleader the district court has the authority to and may, in its sound discretion, award reasonable costs, including attorney's fees, to a disinterested stakeholder that is not in substantial controversy with one of the claimants, whenever it is fair and equitable to do so. *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999), *citing Corrigan Dispatch Co.*, 696 F.2d 359, 364 (5th Cir. 1983). In interpleader actions, the only requirement for such an award is that it be reasonable. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 468 (5th Cir. 1971); *Noeller v. Metropolitan Life Ins. Co.*, 190 F.R.D. 202, 207 (E.D. Tex. 1999). Therefore commentators, including Wright and Miller and James Wm. Moore, have identified five factors to consider in making such an award: "(1) Whether the case is simple or involved; (2) Whether the stakeholder performed any unique services for the claimants or the court; (3) Whether the stakeholder acted in good faith and with diligence; (4) Whether the services rendered benefitted the stakeholder; and (5) Whether the claimants improperly protracted the proceedings." *See, e.g., id.*; *Noeller*, 190 F.R.D. at 207; 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1719 (2d ed. 1986); 4 James Wm. Moore, *et al.*, *Moore's Federal Practice* §

---

[5] An interpleader action is "successful" and fees and costs may be awarded "only when the party initiating the interpleader is acting as a mere stakeholder, which means that he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." 7 Wright & Miller, *Federal Practice and Procedure* § 1719 (2d ed. 1986).

22.96 (3d ed. 1990).[6]  Because all that is required is preparation

of a petition, the deposit of the fund in the court or the posting

of a bond, service on potential claimants, and preparation of an

order discharging the stakeholder, the amount of the fee is usually

moderate.  Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,

*Federal Practice and Procedure* § 1719 (3d ed. 2001).

Courts in this Circuit have also applied the lodestar

method used in civil rights cases to determine whether requested

attorney's fees are reasonable and equitable in interpleaders.

*See, e.g., Coface North America Insurance Company v. Woodlands

Export, LLC*, Civ. A. No. 4:15-CV-621, 2016 WL 4361362 (S.D. Tex.

Aug. 15, 2016); *Metropolitan Life Ins. Co. v. Linnear*, Civ. A. No.

14-0047, 2014 WL 4678713 (W.D. La. Sept. 18, 2014); *Village

Contractors, Inc. v. Trading Fair IV, Inc.*, Civ. A. No. H-09-2701,

2011 WL 2693386 (S.D. Tex. July 11, 2011); *Eterna Benefits, LLC v.

Hartford Life and Accident Insurance Company*, No. Civ. A. 3:96-CV-

3065-D, 1999 WL 202592 (N.D. Tex. Apr. 5, 1999).

"The initial estimate of a reasonable attorney's fee is

properly calculated by multiplying the number of hours reasonably

expended on the litigation times a reasonable hourly rate," a sum

commonly called the "lodestar." *Blum v. Stenson*, 465 U.S. 886, 888

(1984).  "[T]he fee applicant bears the burden of establishing

entitlement to an award and documenting the appropriate hours

expended and hourly rates.  The applicant . . . should maintain

---

[6] Symetra cites the same test in *New York Life Ins. &
Annuity Corp. v. Cannatella*, 550 Fed. Appx. 211, 217 (5th Cir. Dec.
23, 2013)

billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). There is a strong presumption that the lodestar is a reasonable fee, and the fee applicant bears the burden of demonstrating that an upward adjustment by application of the *Johnson* factors[7] is necessary to calculate a reasonable fee. *Walker v. Dept. of HUD*, 99 F.3d 761, 771 (5th Cir. 1996); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995), *cert denied*, 516 U.S. 862 (1995).

A reasonable hourly rate is that rate in the community for such legal services rendered by attorneys of comparable skill, experience, and reputation. *Alberti v. Klevenhagen*, 896 F.2d 927, 936*, vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990); *Heidtman v. County of El Paso*, 171 F.3d 1039, 1043 (5th Cir. 1999). A reasonable hourly rate should be in accord with rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). "While the hourly rate must be 'adequate to attract competent counsel,' the 'measure is not the rates which lions at the bar may command.'" *Coleman v. Houston Independent School District*, 202 F.3d 264 (5th Cir. 1999)(Table)(available on Westlaw), *citing Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990); *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). Furthermore, the relevant legal

---

[7] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989).

community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The fee applicant bears the burden of producing evidence that the requested rate is appropriate within the relevant community. *Condon v. Hunting Energy Services, L.P.*, Civ. A. No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006). Usually the fee applicant establishes the community's reasonable rate through the affidavits of other attorneys of similar caliber practicing there. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *Watkins v. Fordice,* 7 F.3d 453, 458 (5th Cir. 1993).

In addition to the community rate, the district court must also consider the attorneys' regular rates. *Louisiana Power & Light Co.*, 50 F.3d at 328. Generally when an attorney's requested hourly rate is his customary rate, when it is within the range of prevailing market rates, and when the rate is not contested, it is viewed as *prima facie* reasonable. *Id.*, 50 F.3d at 329. To establish the reasonableness of his requested rate, the fee applicant should produce satisfactory evidence beyond his own affidavit "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11. Furthermore, the court may exercise its own expertise and judgment in making an independent valuation of

appropriate attorney fees. *Davis v. Bd. of Sch. Comm'rs of Mobil County*, 526 F.2d 865, 868 (5th Cir. 1976).

The court must determine whether the hours expended by the prevailing party's counsel were "reasonably expended," both as to the total number of hours claimed and the specific hours claimed. *Condon*, 2006 WL 2882857, at *2, *citing Louisiana Power & Light Co.*, 50 F.3d at 329. The fee applicant bears the burden of showing that the hours claimed were reasonably expended. *Hensley*, 461 U.S. at 437. Compensable hours, reasonably spent, are determined from the attorney's contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not. *Hensley*, 461 U.S. at 434; *Louisiana Power & Light*, 50 F.3d at 324.

The fee applicant should exercise "billing judgment" and keep billing time records in a way that enables the reviewing court to "identify distinct claims." *Hensley*, 461 U.S. at 437. *See also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)(An applicant for fees must submit documentation, e.g., contemporaneous billing records or detailed invoices or affidavits, to permit the court to identify noncompensable hours and to determine an appropriate amount of fees.). Counsel must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Id*. *See also Saizan v. Delta Concrete Products Company*, 448 F.3d 795, 799 (5th Cir. 2006)("[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised

billing judgment. Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. [footnotes omitted]"). *See also Louisiana Power*, 50 F.3d at 324-25 ("[T]he documentation must be sufficient for the court to verify that the applicant has met its burden. . . . [A] district court may reduce the number of hours awarded if the documentation is *vague* or *incomplete*. . . . Failing to provide contemporaneous billing statements does not preclude an award of fees per se as long as the evidence produced is adequate to determine reasonable hours."); *Saizan*, 488 F.3d at 799, 800 (billing judgment requires documentation of the hours charged and of the hours written off as duplicative, unproductive or excessive; finding the district court did not commit clear error in finding a failure to produce evidence of billing judgment nor abuse its discretion by imposing a ten percent reduction in the lodestar because of that failure). "Litigants take their chances when submitting fee applications" without adequate information for the court to determine the reasonableness of the hours expended or with vaguely described tasks such as "review pleadings," "correspondence," or documents. *Louisiana Power*, 50 F.3d at 327. The "'contemporaneously created time records [should] specify, for each attorney, the date, the hours expended, and the nature of the work done.'" *Hilton v. Executive Self Storage Associates*, Civ. A. No. H-06-2744, 2009 WL 1750121 at *10 (S.D. Tex. June 18, 2009),

-13-

*quoting Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). When there is no evidence of billing judgment, the appropriate remedy is to reduce the hours awarded by a percentage intended to replace the exercise of billing judgment. *Walker v. U.S. Dep't of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996), *citing Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987)(reducing award by 13%). *See also Saizan*, 448 F.3d at 799-800 & n.25 (affirming district court's 10% reduction for lack of evidence of billing judgment); *Hopwood*, 236 F.3d at 279 (25% reduction for lack of billing judgment and vague and duplicative work); *Johnson-Richardson v. Tangipahoa Parish School Bd.*, Civ. A. No. 12-0140, 2013 WL 5671165, at *4 (E.D. La. Oct. 15, 2013)(30% reduction for block billing[8]), *citing Verizon Business Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010)(citing cases showing that reductions for block billing between 15% and 35% have been found reasonable), *vacated on other*

---

[8] "'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *4 (N.D. Feb. 11. 2011), *quoting Glass v. U.S.*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004). *See also Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 864-65 (S.D. Tex. 2011)(A block-billed entry "lists the tasks performed during that period, giving some detail about the kinds of work performed on a particular day, but does not itemize the amount of time spent on each."). Block billing can make "it impossible to determine the reasonableness of hours spent on each task." *Hi-Tech Electric, Inc. ov Delaware, Inc, v. T&B Construction and Electrical Services, Inc.*, Civ. A. No. 15-3034, 2016 WL 3952089, at *3 (E.D. La. July 22, 2016); *Miller v. Raytheon Co.*, 2013 WL 6838302, at *10 (N.D. Tex. Dec. 27, 2013)(and cases cited therein). A reduction for block billing is not automatic. *Id.; id.*

-14-

*grounds*, 467 Fed. Appx. 312, 2012 WL 1414448 (5th Cir. Apr. 24, 2012).

In determining what is a reasonable fee, after calculating the lodestar, the courts in the Fifth Circuit must consider whether to modify the amount, up or down, by applying the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989)(holding that a fee award under § 1988 should not be capped by a contingent fee agreement between the attorney and his client). *See also Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 (5th Cir. 1986)("The *Johnson* factors govern the determination of reasonableness itself; they are not merely factors to be considered in adjusting the award once the lodestar is calculated."), *citing Johnson v. Georgia Highway Express*, 488 F.2d at 717. The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. As noted, based on one or more *Johnson* factors, the court may apply a multiplier to

adjust the lodestar up or down if that factor or those factors are not already taken into account by the lodestar, itself. *Strong*, 137 F.3d at 850. An adjustment may only be made if the *Johnson* factor has not already been accounted for in the lodestar. *In re Fender*, 12 F.3d 480, 487 (5th Cir.), *cert. denied*, 511 U.S. 1143 (1994); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.)("[T]he district court must be careful . . . not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments."), *cert. denied*, 510 U.S. 991 (1993).

Four of the *Johnson* factors are presumably included in the lodestar calculation: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984); *Shipes*, 987 F.2d at 320.[9]

---

[9] For example, in *Shipes*, the Fifth Circuit reviewed a district court's enhancement of the "lodestar amount based on the novelty and difficulty of the case because it found that there were over three hundred plaintiffs, an entire spectrum of employment decisions was being challenged, the case was complex and highly technical, and Trinity's obstinate conduct caused additional difficulties." 987 F.2d at 321. The panel opined,

> These factors--not so uncommon in much present-day litigation--simply do not render a case "rare" or "exceptional" for purposes of enhancing the lodestar amount. All counsel competent to handle a case such as this one are expected to be able to deal with complex and technical matters; this expertise is reflected in their regular hourly rate, based on fees for counsel of similar experience and ability. Still further, the difficulty in the handling of the case is adequately reflected in the number of hours billed--hours for which the attorney is compensated in the lodestar amount.

"Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases supported by specific evidence on the record and detailed findings by the lower courts." *Id.*; see also *Walker*, 99 F.3d at 771, *citing Alberti v. Klevenhagen*, 896 F.2d 927, 936 (*citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air ("Delaware Valley I")*, 478 U.S. 546, 564-65 (1986))(*quoting Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 323-24 (W.D. Tex. 2007). The Fifth Circuit has also held that two other factors, time limitations imposed by the client or the circumstances and preclusion of other employment, are generally subsumed in the lodestar calculation, too. *Shipes*, 987 F.3d at 321-22; *Heidtman v. City of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Increasing the fee award based on the eighth factor (the amount involved and the results obtained) is only proper when the applicant shows that "it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result . . . ." *Shipes,* 987 F.2d at 322. The *Shipes* panel did state that "enhancement due to the results obtained may be warranted." *Id.* at 321.

To enhance a lodestar, the court "'must explain with a reasonable degree of specificity the findings and reasons upon

---

> Similarly, obstinate conduct by opposite counsel is compensated by the additional number of hours that are required to prevail over such obstinacy.

*Id.*

-17-

which the award is based, including an indication of how each of the *Johnson* factors was applied.'" *Id., quoting Shipes,* 987 F.2d at 320. "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998), *citing Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990); *Saizan v. Delta Concrete Products Co.*, 448 F.3d at 799.

In 7B *Federal Practice & Procedure Civ. 3d* § 1803.1 (Database current through 2008), in discussing what factors may be taken into account to adjust a lodestar, Charles Alan Wright also identified as the most significant one the benefit (monetary or otherwise) conferred. Wright further observed,

> In addition to the benefit conferred, the district court should make a qualitative appraisal of the petitioning lawyer's professional services under each of the categories of work reflected in the time records. This might include the following series of inquiries. First, to what extent do the petitioning attorney's credentials and legal experience mark the attorney as someone above the qualitative medium of those of comparable age practicing in the community? Second, what was the quality of the work the attorney actually performed in the case? Third, how efficient was the petitioning attorney in processing the lawsuit? This factor can only be considered by a careful examination of the novelty of the issues presented by the matter and the lawsuit's overall complexity. . . . Fourth, what responsibility did the petitioning attorney assume in the development and management of the case? . . . . All of these factors should help the court in evaluating the quality of the representation.

*Id.*

Furthermore, "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Abrams,* 805 F.2d at 535. "[H]ours . . . spent in the passive role of an observer while other attorneys perform" are usually not billable. *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982), *quoted in Coleman*, 202 F.3d at 264 (Table; available on Westlaw).

The hourly rate for attorneys should not be applied to clerical, secretarial or administrative work, since these are part of office overhead. *Reyes v. Spur Discount Store No. 4*, Civ. A. No. 07-2717, 2007 WL 2571905, *3 & nn.19-20 (E.D. La. Aug. 31, 2007); *Abrams*, 805 F.2d at 536 (court should consider whether the work performed was "'legal work in the strict sense,' or was merely clerical work that happened to be performed by a lawyer."), *quoting Johnson v. Georgia Highway Express*, 488 F.2d at 717. "[I]nvestigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers, but which a lawyer may do because he has no other help available . . . may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Id.* at 535. Work by paralegals may only be recovered to the extent that it is similar to that typically performed by attorneys; otherwise it is an unrecoverable overhead expense. *Coleman*, 202 F.3d 264, *citing*

*Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit
B 1982).

### B. Facts

In the instant interpleader, three individuals worked on
behalf of Transamerica: lead counsel David L. Pybus, a shareholder
in the firm of Preis PLC, working in its Houston office, who was
graduated from the University of Texas School of Law in 1986, has
been licensed ever since to practice law in Texas, and practices in
the areas of commercial disputes, contractual disputes, and
transfer of structured settlement payment rights; his associate,
Caroline T. Webb, who graduated *cum laude* from South Texas College
of Law in 2005, has practiced law in Texas since then, with
practice areas in commercial disputes and insurance; and paralegal
Amanda Reid, who had no formal paralegal education, but was
mentored by attorneys and self-taught on the job, has 17 years of
experience, has been in the Houston Office of Preis PLC since 2009,
where she is the lead paralegal. #21-1, Pybus Affidavit. Pybus
claims that she "performs tasks traditionally performed by an
attorney," but without providing any examples. #21-1 R P. 2. The
hourly rates of the three are as follows: Pybus, $325; Webb, $250;
and Reid, $105.00. #21 at p.6. Pybus avers that these fees are
those customarily charged in Houston for the same or similar
services by attorneys and paralegals with similar experience,
reputation, and ability as the attorneys and paralegal in this
matter, considering the nature of the controversy, the time limits
imposed, the results obtained compared with results in similar

cases, and the nature and length of [Pybus'] relationship with Transamerica.

### C. Transamerica's Request (#21)

Transamerica seeks an order awarding it reasonable and necessary fees and costs in the total amount of $54,365.04 ($53,597.00 in attorneys' fees and $768.04 in costs) to come from the interpleader funds. Its request is supported by billing records, by a Bill of Costs for $768.04 (#21, Ex. A-2), by invoices (reflecting time and expense with description of services rendered and costs expended) (Ex. A-1), and by an affidavit from David L. Pybus (Exhibit A), Transamerica's lead counsel in this interpleader, verifying the facts stated in the Application and supporting a finding that the requested amounts are reasonable and necessary. The Bill of Costs "reflects those costs paid, or obligation to pay incurred, by Transamerica in this matter except for costs relating to access to federal records via PACER, for which Transamerica does not seek recovery."[10]   #2-1, ¶ 15.

Pybus explains that Transamerica's requested amount for fees through December 31, 2016 is based on 135.40 hours of work at $325.00 per hour by Pybus, amounting to $44,004.00; 6.90 hours of work by Webb at $250.00 per hour, for a total of $1,725.00; and 12.40 hours of work by Reid at $105.00 per hour, for a total of $1,302.00.

---

[10] The Court notes that this statement is the only example of billing judgment in the record. Nevertheless the amount at most is trivial, since parties receive one free access when they are notified of a filing in the case and the document can be downloaded for free.

The requested amount includes an estimated additional 25 hours ($6,565.00 in fees) for work not yet billed, including time preparing Transmerica's Application, with its accompanying affidavit and evidence, and its preparation of Transamerica's Rule 60 motion to correct error. That estimate is for ten hours of work by Pybus, 12 hours of work by Webb, and three hours of work by Reid.

Transamerica applies the five-factor test listed above.

1. Is the case simple or involved?

Transamerica argues that this interpleader is not only atypical, but extremely complex, as is evidenced by the twelve-year procedural history discussed and findings made in the Court's previous Opinion and Order (#20), which Transamerica also fully incorporates by reference into its Application and this Court into this Opinion and Order.[11] In addition to confronting multiple claimants with multiple positions for payment of the funds in the Chung Annuity Payment streams, Transamerica also had to contest a case in Snohomish County, Washington, where Symetra filed a motion seeking an order to redirect the Chung Annuity Payments to Symetra.

---

[11] As noted in the Court's previous opinion and order, "Transamerica is a financial institution that files interpleader actions as a regular event in its ordinary course of business" and as a matter of self interest "benefits from interpleader actions to avoid multiple liability." A number of courts have concluded that fees should not be awarded in such a case if it is easy to resolve, thus implicating the first factor. Here, however, the Court agrees with Transamerica that the procedural history reflects substantial hurdles in getting this interpleader establish given the numerous suits filed in various courts in Texas and Washington, different court orders, and the difficulties in getting all necessary parties together in one action.

The claimants each sought to have Transamerica intervene in their various matters, requiring it to evaluate the propriety and feasibility of each of those requests, including researching necessary parties and evaluating whether each proceeding had even remained open. It had to research finding the correct parties and the citizenship of each, two of which are incorporated under the laws of Anguilla in the British West Indies. While standard interpleaders are about sums already due and owing, here Transamerica had to research how to interplead sums not yet due, specifically $2,750 per month with payment increases of 3% per annum, to be paid for the duration of Mr. Chung's lifetime or until 2024, whichever occurs first. (Transamerica currently deposits $6,823.72 into the Court's registry every month, and total future payments will amount to approximately $780,000.00.) Transamerica also had to research and find precedent for interpleading future amounts and discharge of the stakeholder in advance of interpleading future payments. The Court acknowledged the rarity of precedent on these issues in #20.[12] Another issue requiring

---

[12] An unusual feature of this interpleader is that Transamerica has deposited all past annuity payments in the Court's Registry, but will continue to deposit all future annuity payments only as they become due. In a case where the stakeholder was an insurance company, the Fifth Circuit opined,

> Although the deposit requirement is a jurisdictional prerequisite to suit under the interpleader statute, 28 U.S.C. § 1335, payment of the face amount of the policy proceeds into the court has long been held to be sufficient. E.G. Ross v. International Life Insurance Co., 24 F.2d 345 (6th Cir. 11928). Thus, "[t]he preferred practice is to require only that the stakeholder deposit all of the disputed property he has in his

research and analysis is whether a "single" fund exists when multiple future payments are made over years. Transamerica claims that Claimants opposed Transamerica on every matter, thus complicating proceedings, delaying the Court's final determination, and driving up Transamrica's fees and costs.

In #20, this Court concluded that this interpleader is "not a routine dispute" but a "complicated and unforeseeable contest" involving a number of different courts and a complicated dispute over entitlement to the Chung Annuity Payment streams. #20 at p.22.

*2. Stakeholder's Unique Services?*

Transamerica points out that it managed to reduce multiple proceedings into one singular action with all necessary parties participating. It also persuaded Symetra to wait for this Court's decision, rather than pushing on in the Washington case, which lacked necessary parties.

*3. Stakeholder Acted in Good faith and with Diligence?*

In #20 this Court found that Transamerica "acted in good faith in filing the proper and appropriate interpleader action." #20 at p. 26. Observing that many other actions involving the Chung Annuity Payments existed and lacked necessary parties,

---

possession, even though it might be less than is claimed by one or more of the defendants." C. Wright & A. Miller, Federal Practice and Procedure § 1716 at 459 (1972). This "preferred" practice is the rule in this Circuit. *Austin v. Texas-Ohio Gas. Co.*, 218 F.2d 739, 744-45 (5th Cir. 1955).

By analogy the same rule would apply to financial institution Transamerica with regard to the Chung Annuity Payments here.

-24-

Transamerica worked hard to find the best, singular legal action to handle the competing claims--seeking the correct and necessary parties, evaluating venue, determining jurisdictional questions, including citizenship, and finally, against fierce opposition, seeking to be discharged with prejudice, in addition with an award of fees and costs. It found precedent to support its arguments through diligent research and to convince the Court to discharge it from further liability and to award it fees. It acted in good faith and with diligence to resolve efficiently all the issues relating to claimants' claims.

### 4. The Services Rendered Benefitted Stakeholder?

Transamerica maintains that it has not benefitted by the fees expended here except for its discharge in advance of making future payments and the fact that it will not be subject to further protracted litigation in multiple different courts relating to these same issues, i.e, only natural consequences of prevailing in this action.

### 5. Claimants Improperly Protracted Proceedings?

In #20 the Court found that claimants "protracted this litigation beyond the already excessively protracted twelve years these parties have been fighting in court" even though the purpose of this interpleader was "to protect Transamerica from contradictory decisions and/or having to fight multiple claimants on multiple fronts." #20 at pp. 20 and 26. As a result the time was unnecessarily extended and the expense compounded by their opposition.

### III. Defendant Symetra Life Insurance Company's Response (#23)

Symetra maintains that no concurrent litigation protracted these interpleader proceeds because the interpleader was only initiated in May 2016 and with regard to Transmerica, is near its end.

Symetra objects that Transamerica has failed to show that its requested fees and costs are reasonable and asks that they be reduced for several reasons: (1) excessive and duplicative fees[13]; (2) undocumented and/or block billed fees; (3) paralegal fees charged for purely administrative, clerical[14] and/or secretarial work; (4) paralegal fees for services of any paralegal whose prevailing market rate cannot be determined; and (5) exercise of billing judgment.

Examining the billing records, Symetra claims that "15 collective hours were billed by [Pybus and Webb] for research, review and/or analysis of general procedural and substantive issues regarding interpleader actions." Another 4.3 hours were billed for review and analysis of citizenship of the parties and service of

_____

[13] See #23, Ex. A at 2, Example 2. Fifteen collective hours were billed by both attorneys for research, review and/or analysis of general procedural and substantive issues regarding interpleaders. Another 4.3 hours were billed for review and analysis of the citizenship of the parties and service of process issues. *Id.* at 3, Example 3. 1.8 hours were billed for preparation of Transamerica's Certificate of Interested Parties (#4). Ex. A at 3, Example 4. In addition, Pybus's clerical work was billed at his hourly rate as a shareholder of $325.00 per hour. *Id.* at 4, Example 5.

[14] *See Broyles v. State of Texas*, Civ. A. No. H-08-02320, 2009 WL 2215781, at *11 (S.D. Tex. July 23. 2009)("Attorneys' fees may not be awarded for clerical work."), *citing Vela v, City of Houston*, 276 F.3d 659, 681 (5th Dir. 2001)("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical.").

process issues, while an additional 1.8 hours were billed for the preparation of Transamerica's Certificate of Interested Parties (34). Moreover time was billed for clerical work by Pybus at his hourly rate as a shareholder of $325.00 per hour.

"'Compensable hours, reasonably spent are determined from the attorney's time records.' Courts generally require the movant 'to provide contemporaneous time or billing records or other documentation which the district court must examine and discern which hours are compensable and which are not.'" *Prospect Energy Corp. v. Dallas Gas Partners, LP.*, Civ. A. No. H-10-1396, 2011 WL 5864292, at *2 (S.D. Tex. Nov. 22, 2011)(*citing In re Enron Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008)), *aff'd*, 733 F.3d 148 (5th Cir. 2013). Symetra objects to the block billing in the billing records, making it impossible to determine the reasonableness of the time expended, specifically in Transamerica's request for $6,565.00 in estimated fees for an estimated 25 hours for the preparation of its Application and supporting affidavit and its Rule 60 motion, supported by Pybus's affidavit, which described the work as "time preparing this Application with affidavit and documentary evidence and necessary Motion under Rule 60." #21 at 7, ¶ 9; *id.* at 4, ¶ 12. There is also no evidence offered of the separate task involved in preparing the two instruments. Symetra also points to block billing in Pybus's May 16, 2016 entry of 2.4 hours for "Review and analysis of Symetra's motion to redirect payments and documents regarding pending claims in federal court and various foreclosure sales/transfers involving Rapid Settlements." #21-2 at 3. Symetra

asks the Court to reject any block-billed fees from attorney's fees that Transamerica may be awarded.

"A party seeking a fee award has the duty to segregate fees for claims for which fees are recoverable, from fees for claims for which they are not." *Prospect Energy*, 2011 WL 5864292, at *4. Fees for paralegal work may be recovered if the paralegal is doing work traditionally performed by an attorney. *Id.* at *3. Symetra complains of the award of paralegal fees for administrative, clerical, ministerial and/or secretarial tasks and asks the Court to reduce the fees for such requested ministerial tasks from Transamerica. Furthermore, while Transamerica asks for fees for 12.4 hours of paralegal services by Reid, the invoices it submitted identify only 4.4 hours. #21, Ex. A, at 5, Example 7. Transamerica also asked for eight hours of paralegal fees for work performed by unidentified "PL." #21 and 21-1 PL's training and experience are not discussed, so there is insufficient evidence to determine if the request is reasonable or charged at the prevailing market rate for similar services by similarly trained and experienced paralegals in the community. Thus Transamerica requests that at minimum the Court reduce the requested $840.00 award for PL's services. *See Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325-26 (5th Cir. 1980)(affirming rejection of compensation for work performed by one called a paralegal, but without evidence of any paralegal training).

If a party seeking an award of fees does not show that it exercised billing judgment, the court "should reduce the award by a percentage to substitute for the exercise of billing judgment and

eliminate hours that were not reasonably expended." Symetra
complains that Transamerica does not produce any documents showing
that it wrote off any excessive, duplicative or unproductive time
to support its requested award of $54,365.04. Instead the invoices
demonstrate a lack of billing judgment because work was performed
by a partner that should have been done by associates or
paralegals. When overqualified attorneys perform work and bill it
at their regular rates, there is a lack of billing judgment.
*Preston Exploration Co., LP v. GTSP, LLC*, Civ. A. No. H-08-3341,
2013 WL 3229678, at *6-7 (S.D. Tex. June 25, 2013); *Humphrey v.
United Way or Texas Gulf Coast*, Civ. A. No. H-05-758, 2008  WL
5070057, at *3 (S.D. Tex. Nov. 20, 2008). Thus the requested fees
should be reduced by a percentage that the Court determines is
equitable.

        Finally Symetra argues that a reasonable attorney fee and
cost award for Transamerica should be paid by A.M.Y., FinServ, and
Rapid because this action was necessitated by them, and not by
Symetra. "Attorneys' fees and costs 'are generally awarded against
the interpleader fund, but may in the discretion of the court, be
taxed against one of the parties when their conduct justifies it.'"
*Westlake Styrene, LLC v. U.S.*, Civ. A. No. H-10-2631, 2011 WL
643265, at 8 (S.D. Tex. Feb. 16, 2011), *citing Septembertide Pub.,
B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d. Cir. 1989),
*citing Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497-98
(11th Cir. 1986). Symetra's claim to the stake arose out of a 2015
judgment awarding Symetra fees and costs in the sum of $901,297.63,
which despite the court order Rapid refused to pay by December 3,

2015. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, Civ. A. No. 4:05-cv-03167 (S.D. Tex., Doc. 409 at 17, ¶ VI). Rapid's refusal to comply with the Court's order, through no fault of Symetra, caused the subsequent litigation, including the instant case. While litigating Symetra learned that Rapid was involved in a larger scheme to avoid numerous judgments against it and to defraud its judgment creditors, including Symetra, so Symetra filed Civil Action H-16-cv-791, *Symetra Life Ins. Co. and Symetra Assigned Benefit Services Co. v. RSL-3B-IL, Ltd., RSL-2012-1, LP, Liquidating Marketing, Ltd. (f/k/a Rapid Settlements, Ltd.), Steward Feldman, Marla Matz Feldman, and IberiaBank, N.A.* in the Southern District of Texas ("Fraudulent Transfer Litigation"), alleging that Rapid and its affiliated companies fraudulently transferred annuity rights totaling $60 million. Fraudulent Transfer Litigation #56. The claims of A.M.Y. and FinServ to the stake arise from security interests that they purportedly obtained from Rapid. #10 at 21-54.

Furthermore, Transamerica's filing of this interpleader was influenced by Transamerica's prior dealings and litigation with Rapid. In 2013, RSL Funding, Inc. ("RSL"), Rapid's predecessor and a "closely related" company,[15] sued Jerry M. Green ("Green") in Civil Action H-13-2058 in the Southern District of Texas ("RSL Suit") to confirm two arbitration awards involving the transfer of Green's structured settlement annuity payments. RSL Suit, #83 at 2. Symetra claims that their efforts to transfer violated public

---

[15] *See* #23, pp. 18-19 n.8.

policy because they circumvented state structured settlement protection act ("SSPA") laws mandating that a court, not an arbitrator, must approve the transfers.

Transamerica intervened in the RSL Suit because the arbitration awards allegedly bound Transamerica and required Transamerica to deposit the Green annuity payments despite a contrary order from a Florida court they be filed in that court, in a lawsuit filed before the RSL Suit.

Transamerica moved for sanctions under Federal Rule of Civil Procedure 11 against RSL on the grounds that RSL would "stop at nothing in an attempt to punish Transamerica for 'interfering with RSL's methods of securing payment rights"and that RSL and Stewart Feldman "used the court as a weapon against Jerry Green and Transamerica."

Symetra surmises that Transamerica's own problems motivated it to interplead the Chung Annuity Payments. Symetra summarizes that fairness and equity require A.M.Y., FinServ, and Rapid, not Symetra, to pay Transamerica's fees and costs.

If the Court determines that Symetra should pay for any part of the fees and costs awarded to Transamerica, Symetra asks that it be paid from the interpleaded funds.

## IV. Defendants A.M.Y. Property & Casualty Insurance Company ("AMY"), FinServ Casualty Corp. ("FinServ"), and Liquidating Marketing, Ltd.'s ("LM's[16]") Opposition (#24)

---

[16] Formerly known as Rapid Settlements, Ltd.

A.M.Y. , FinServ, and LM (f/k/a Rapid Settlements, Ltd.) argue that the Court should reduce the amount of the requested fees by at least 30%, to an award of no more than $37,517.90 because (1) Transamerica provided no evidence demonstrating that it exercised billing judgment to eliminate any excessive, unproductive, redundant, or inadequately documented fees, empower the Court to reduce the fees[17]; (2) Transamerica's lead counsel performed most of the work on file, charged at a Transamerica partner's rate, rather than delegating suitable jobs to an associate or paralegal who bills at a lower rate; and (3) Transamerica was to recover for legal services that produced no tangible benefit because the Court denied Transamerica's requested relief (discharge) as premature at the time.

Last of all, they assert that Symetra should bear most of the fees and costs awarded to Transamerica because Symetra multiplied and complicated the procedures giving rise to this suit. They request that Symetra pay at least 75% of the fees and costs, while holding A.M.Y., FinServ, and LM/Rapid responsible for 25% at most. Symetra continues to forum shop by commencing a new suit in a Washington state court that violates the Court's permanent injunction.

---

[17] Defendants claim that in the Fifth Circuit, "segregation [of recoverable from nonrecoverable fees] is an essential component of reasonableness that a party must show in a request for attorney's fees." *Am. Home Assurance C. v. United Space Alliance, LLC*, 378 F.3d 472, 494 (5th Cir. 2004).

What evidence Transamerica submits is its attorney's affidavit, which does not mention billing judgment or explain why Transmerica's lead attorney could not have delegated tasks to an associate attorney with twelve years of experience in commercial litigation experience in commercial litigation and insurance disputes, and his billing records. #21-1. That evidence reveals that, unlike normal case staffing, a partner billed 88% of the total number of hours, without any testimony that would show this was sound billing judgment.

Defendants urge the Court to deny Transamerica all of the fees it incurred in prematurely seeking a discharge before jurisdiction attached to this interpleader and before Symetra appeared as a party. #2, 7, and 13. They also argue that Transamerica should not be allowed to recover fees for projects on which it did not prevail, such as the Court's initial denial of Transamerica's first request for discharge without prejudice because Symetra "has not yet been served nor appeared and might object to the discharge and/or the interpleader." #13. Defendants estimate the time spent on seeking prematurely the remedy of discharge was approximately eight hours on 5/13/16 and 5/17-16-5/20/16. At that time Transamerica sought a discharge before jurisdiction even attached via court approval for the deposit of funds, which would give Transamerica the power to order a discharge. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976(While "the deposit requirement is a jurisdictional prerequisite," the rule in this Circuit and "[t]he preferred practice is to require only that the stakeholder deposit all of the

disputed property he has in his possession even though it might be less than is claimed by one or more of the defendants.").

Defendants further contend that Transamerica's counsel impermissibly charged his hourly fee for clerical tasks, including the following: "Check conflicts check for Symetra case" (0.20 hr.); "Check conflicts regarding ongoing Symetra case" (0.30 hr.); "Review and analysis of court docket in *Symetra v. Rapid* (Judge Rosenthal case) to determine status of case" (0.50 hr.); "Review file assemble information for interpleader" (1.50 hr.; "Review federal court records for related cases involving Symetra and Rapid entities" (0.50); "Review Washington Court records to determine status of Symetra suit" (0.30 hr.); "Review and analysis of issues regarding initial deadlines set by court" (0.30); "Final preparation of correspondence to court with Courtesy copy of Motion for Partial Summary Judgment" (0.50); "Further preparation of correspondence to Court with courtesy copy of Motion for Partial Summary Judgment and response deadline (0.20 hr.); "Review file to determine status of deadlines (0.10 hr.); "Preparation of correspondence to District Clerk with check to comply with Court Order regarding interpleader of annuity funds" (0.20 hr.); "Preparation of correspondence to Court Clerk with check to comply with Court Order" (0.20); "Review and analysis of Scheduling Order and issues regarding missing deadlines" 0.30); and "Exchange correspondence with Andy Martin regarding Scheduling Order and next steps going forward" (0.40). For this lack of business judgment, Defendants ask the Court to reduce the fees by an additional 10%.

Defendants maintain that the court may properly deduct a

percentage of fees to address each category of deficiency, e.g., lack of billing judgment, redundant time entries, and unproductive billing. *See, e.g., Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, Action No. 3:09-CV-0752-D, 2011 WL 487754, at &4-6, 10-13 & n.17 (N.D. Tex. Feb. 11, 2011); *Carroll v. Sanderson Farms, Inc.*, Civ. Action No. H-10-3108, 2014 WL 549380 (S.D. Tex. Feb. 11, 2014). The Fifth Circuit agrees with aggregating percentage reductions of fees after assigning a percentage reduction to each category that represents a billing deficiency. *See Hopwood v. State of Texas*, 236 F.3d 256, 279 (5th Cir. 2000), *cert. denied*, 533 U.S. 929 (2001); *Chaparral Tex., LP v. W. Dale Morris, Inc.*, Civ. A. No. H-06-2468, Civ. A. No. H-06-2468, 2009 WL 13809, at *30, 33-37, 53-58 (S.D. Feb. 23, 2009). Thus Defendants conclude that a cumulative reduction totaling 30% of the fees should result.

Furthermore, although the Court seems to blame Defendants for extending and complicating ths case, Defendants contend that Symetra should pay at least 75% of any fee award. The record reflects that the Court observed that "*Symetra* forced Transamerica to file this interpleader by filing its motion in the Snohomish County, Washington case to order Transamerica to redirect the Chung Annuity Payments to Symetra." #20 at 20. The Court mainly objected to Defendants' filing actions "without necessary parties in an attempt to gain control of the Chung Annuity Payments as well as over other funds and delay resolution to the parties' disputes." *Id.* at 26.

In sum, the Interpleader Claimants urge the Court to use its discretion to reduce the fee requested by Transamerica by an appropriate percentage, award Transamerica all of the costs it seeks, and order that Symetra pay at least 75% of any award of fees and costs, and the Interpleader Claimants at most 25% of any award of fees and costs.

## IV.  Court's Decision

After careful review of the record and the applicable law, the Court in its discretion finds that some reduction of the requested fee award is appropriate because Transamerica has not provided the evidence the Court needs to determine whether the requested hourly fees are reasonable.  For this deficiency the Court will deduct 10% from the requested amount.  On the other hand, the Court has found some evidence that will allow it to make a decision.

The only affidavit supporting the fee request from Transamerican is that of its own counsel, hardly disinterested; no other attorneys from the community have offered their opinions. *See Blum*, 465 U.S. at 896 n.11 ("[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *Tollett*, 285 F. 3d at 368 (Usually the fee applicant establishes the community's reasonable rate through the affidavits of other attorneys of similar caliber practicing there); *Rangel v. Gonzalez Moscorro*, 274 F.R.D. 585, 596 (S.D. Tex. 2011)(same; "Such

-36-

affidavits should contain direct or opinion evidence as to what local attorneys would charge under similar circumstances."). Here such are lacking.

Nevertheless, the Court finds that Pybus's requested hourly rate of $325 per hour appears to be slightly above the medium hourly rates found by State Bar of Texas Department of Research and Analysis 2015 Hourly Fact Sheet (published in 2016), which for full time male attorneys is $275, for attorneys with over 25 years of experience, $300, and for those who practice area of commercial litigation in Houston, $295. Based on the 2015 Hourly Fact Sheet, the Court finds that Pybus's hourly rate is reasonable for a shareholder in the firm of Preis PLC.

Webb has 11 years of legal experience. Webb's requested hourly rate of $250 is generally around or a little below the top number of the State Bar's median rate for attorneys with 11 to 15 years of experience (#258), hourly rate by age ($250), hourly rate for Houston ($275) and hourly rate in Houston for commercial litigation ($295) and insurance ($200). Thus her request is not out of line with the community's standard.

Nevertheless the Court agrees with Defendants that certain factors warrant reduction of the requested fees. There is no evidence of  billing judgment being employed in the evidence the attorneys present. For this deficiency the Court reduces the fee award by 10%.

There also appear to be redundancies in research between the two attorneys and research of very basic information about interpleaders which an attorney with their experience should know

and for which they should not charge their most recent clients. The Court also agrees that Pybus and Webb are overqualified for some of the clerical and administrative work for which they charge their regular fees, as pointed out particularly by the Interpleader Defendants. For these deficiencies, the Court reduces the requested fees by another 10%.

With regard to Reid and the absence of information about the specific services she performed generally and specifically on this case prevent the Court from making even a reasonable determination of an appropriate fee award. Thus the Court denies her request for fees.

The Court finds that any adjustment by applying the *Johnson* factors is unnecessary as the present analysis adequately addresses relevant matters.

Thus the Court grants an award of attorneys' fees to Pybus and Webb in the amount of $36,583.20. In addition, because there is no opposition and because the requested award of costs is supported by the record, the Court awards costs in the amount of $768.04.

### Court's Order

For the reasons stated above, the Court

ORDERS that Transamerica's motion to correct clerical error in order (#22) is GRANTED and the Court CLARIFIES that its decision to discharge stakeholder Transamerica was intended to be and is **with** prejudice.

In addition, Transamerica's application for attorneys' fees (#21) for services rendered in prosecuting this interpleader

is GRANTED in part and DENIED in part, and Transamerica is entitled to an award of fees in the amount of $36,583.20.  Transamerica's request for an award of costs in the amount of $768.04 is GRANTED. Both these sums shall be paid out of the interpleader fund.

      **SIGNED** at Houston, Texas, this 9th  day of August, 2017.


                                      _____
                                          **MELINDA HARMON**
                                **UNITED STATES DISTRICT JUDGE**