United States District Court
Southern District of Texas
**ENTERED**
September 19, 2018
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TRANSAMERICA ANNUITY SERVICE CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 4:16-CV-1426 |
| SYMETRA LIFE INSURANCE COMPANY, A.M.Y. PROPERTY & CASUALTY INSURANCE COMPANY, FINSERV CASUALTY CORP., LIQUIDATING MARKETING, LTD. f/k/a RAPID SETTLEMENTS, LTD., and SYMETRA ASSIGNED BENEFITS SERVICES COMPANY, | § § § § § § § § § § | |
| Defendants. | § § | |

**O R D E R**

Pending before the Court are Symetra Life Insurance Company's Motion to Dismiss, **(Instrument No. 40)**, Symetra Assigned Benefits Service Company's Motion to Dismiss Cross-Claims and Motion to Join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd. **(Instrument No. 49)**, Cross-Plaintiffs A.M.Y. Property & Casualty Insurance Company's and FinServ Casualty Corp.'s Motion for Summary Judgment, **(Instrument No. 55)**, and Cross-Defendants Symetra Life Insurance Company's & Symetra Assigned Benefits Service Company's Motion for Summary Judgment. **(Instrument No. 68)**.

**I.**

**A.**

This interpleader case is one of four cases currently pending before the Southern District of Texas involving the years-long efforts of Cross-Defendants Symetra Life Insurance Company

("Symetra Life") and Symetra Assigned Benefits Services Company ("Symetra Assigned Benefits") to collect on a prior court judgment against Cross-Plaintiff Liquidated Marketing, Ltd., formerly known as Rapid Settlements, Ltd. ("Rapid"). (*See Symetra Life Ins. Co., et al. v. Rapid Settlements, Ltd.*, No. 4:05-cv-3167, Instrument No. 354 ("Final Judgment against Rapid") (Rosenthal, J.)). Stewart Feldman, founder of the Feldman Law Firm LLP, owns and manages Rapid, as well as Cross-Plaintiffs A.M.Y. Property & Casualty Insurance Company and FinServ Casualty Corp. (Instrument No. 86 at 5-6). Symetra Life and Symetra Assigned Benefits allege that Feldman has engaged in fraudulent transfers of the assets through his companies to place assets beyond the easy reach of creditors. *Id.* at 31-32. This case relates to Cross-Defendant's efforts to collect on its judgment against Rapid and Cross-Plaintiffs A.M.Y. Property & Casualty Insurance Company and FinServ Casualty Corp.'s assertion that they are secured creditors with perfected security interests in the assets of Rapid.

## B.

### 1. The Structure of the Feldman Enterprises

Stewart Feldman ("Feldman") owns and controls A.M.Y. Property and Casualty Insurance Company ("A.M.Y."), Liquidating Marketing, Ltd. f/k/a Rapid Settlements, Ltd. ("Rapid"), RSL-3B-IL, Ltd. ("RSL-3B"), and RSL Special-IV, Ltd. ("Special-IV"). (Instrument No. 68 at 3). Rapid was formed in March 2003, and RSL-3B was formed in June 2003. (Instrument No. 86 at 32). FinServ Casualty Corporation ("FinServ") was started in 2007 as a spin-off of A.M.Y. and thereafter operated as an independent company. (Instruments No. 55 at 7).

A.M.Y. and FinServ allege that from 2003 through 2008, Rapid acted as a broker to locate structured settlement payments for sale in the secondary market and facilitate their transfer

from payees to buyers like Special-IV. (Instrument No. 55 at 6). A.M.Y. and FinServ, by contrast, are regulated property and casualty insurance companies that, at times, invest their assets by entering secured loan agreements as a lender. *Id.* A.M.Y. and FinServ allege that in the secondary market, it is common for secured lenders like A.M.Y. and FinServ to extend financing to companies like Rapid and Special-IV in exchange for a security interest in their structured settlement payments. *Id.*

In October 2003, A.M.Y. entered into a secured loan agreement with the Feldman Law Firm LLP, RSL-3B, and Rapid. (Instrument No. 55-13). Under the loan agreement, A.M.Y. agreed to loan money to the borrowers, made up of the Feldman Law Firm LLP, RSL-3B, and Rapid, in exchange for a first and prior lien and security interest in the borrowers' now-owned or later-acquired payment intangibles. *Id.* at 6, ¶ 3.1. On March 1, 2004, A.M.Y. filed a UCC-1 financing statement to perfect its security interest against Rapid. (Instrument No. 55-14).

In May 2004, RSL-3B and Rapid entered into a servicing agreement, under which Rapid, as servicing agent, agreed to service and administer structured settlements in the name of RSL-3B and for the benefit of RSL-3B. (Instrument No. 56-5 at 1). Section 1(a) of the agreement defines the scope of "servicing and administering" as "depositing and recording of the payments, but no other services." *Id.* Section 4 of the agreement stipulates that the parties shall annually agree upon a servicing fee to be paid to the servicing agent. *Id.* at 3 ¶ 4.

In January 2005, the October 2003 secured loan agreement was amended to add Special-IV as an additional borrower. (Instrument No. 55-15). On August 10, 2007, A.M.Y. filed a UCC-1 financing statement to perfect this security interest against Special-IV. (Instrument No. 55-16).

In January 2006, RSL-3B, as servicing agent, entered into another servicing agreement with RSL-5B-IL, Ltd., and Special-IV. (Instrument No. 56-6). Under this servicing agreement,

RSL-3B agreed to function as a servicing agent for RSL-5B-IL, Ltd. and Special-IV to collect, deposit and distribute to RSL-5B-IL and Special-IV settlement receivables, annuities, lotteries, and other financial instruments. *Id.* As a servicing agent, the agreement gave RSL-3B the authority to serve as a trustee of payments owed to Special-IV and to have payments placed in RSL-3B's name before transferring them to Special-IV. *Id.* at 1 ¶ 1. The servicing agreement further provided that RSL-3B had the authority to enter into subservicing agreements with other subservicing agents. *Id.* at 2 ¶ 5.

In 2007, FinServ was formed as a spin-off of A.M.Y. (Instrument No. 55 at 7). In October 2008, A.M.Y. assigned a prorated portion of its security interests under the further amended January 2005 secured loan agreement to FinServ in exchange for FinServ's agreement to provide financing to borrowers including Rapid and Special-IV. *Id.* FinServ filed a UCC-1 financing statement to perfect its security interests in Rapid and Special-IV's assets on October 8, 2008. (Instrument No. 55-21 at 30) *Id.*

In December 2008, Rapid was no longer able to pay its creditors, including A.M.Y. and FinServ. (Instrument No. 55 at 9). As of December 2008, Rapid's outstanding debt to A.M.Y. and FinServ was over $2.3 million. *Id.* In December 2008, A.M.Y. and FinServ foreclosed on all of Rapid's property, including any residual rights in structured settlement payments transferred to Special-IV. *Id.* at 9. In April 2016, A.M.Y. and FinServ foreclosed on and purchased all of Special-IV's property, including its rights to certain structured settlement payments related to Transamerica Life Insurance Company (the "Chung Payments"), as well as residual rights (if any) of Rapid to these payments. *Id.* at 10; (Instrument No. 57). A.M.Y. alleges that the foreclosure on Rapid's residual rights in 2016 was entirely redundant of the December 2008 foreclosure. (Instrument No. 55 at 10 n.53).

4

In January 2017, A.M.Y. and FinServ merged, with A.M.Y. as the successor to both company's security interests. (Instrument No. 55 at 7 n.30).

### 2. The Chung Payments

In 1986, Harrison Chung ("Chung"), a Washington State resident, entered into a settlement agreement with Transamerica Insurance Service for personal injuries that Chung sustained. (Instrument No. 68-15). As part of the settlement, Chung was to receive monthly payments of $2,750 during his lifetime, to increase at 3% annually (the "Chung Payments"). *Id.* at 4-5. The settlement agreement includes an anti-assignment provision that restricted Chung from selling, mortgaging, or encumbering the annuity payments, "by assignment or otherwise." *Id.* at 6 ¶ 3. To fund the structured-settlement payments, Transamerica Insurance Service purchased an annuity policy from the affiliated Transamerica Annuity Service Corporation ("Transamerica"). (Instrument No. 55-23).

In March 2007, Chung entered into a written agreement with Rapid to transfer to Rapid the Chung Payments, which consist of 107 of the payments Transamerica was obligated to pay to Chung. (Instrument No. 68-2). Section 13(c) of the Transfer Agreement provides that:

> [Rapid] may assign all or any portion of its right, title, and interest in and to this Agreement . . . without the consent of any other person. If and when [Rapid] assigns this Agreement and following notice of such, all references to [Rapid] in this Agreement shall be read and understood to refer only to [Rapid]'s assignee and [Rapid] shall be, to the extent of such assignment, fully discharged from any liability hereunder.

(Instrument No. 68-2 at 7, ¶ 13(c)). The agreement was entered into only by Chung and Rapid and does not state that Rapid was acting as a broker for Special-IV.

In May 2007, Rapid applied to the Superior Court of Snohomish County, Washington, for court approval of a transfer of the rights to the Chung Payments pursuant to Washington State's Structured Settlement Protection Act. (Instrument No. 56). In the application to the Snohomish

County court, Rapid provided that it was reserving the right to assign its rights to the Chung Payments. *Id.* at 5 ¶ 4.14.

In November 2007, the Snohomish County court entered an order transferring Chung's rights in his annuity payments to Rapid. (the "Snohomish County Transfer Order"). (Instrument No. 56-2). The Snohomish County Transfer Order provides that Rapid "represents and warrants that, notwithstanding anything to the contrary in the Application or elsewhere, it has not transferred or assigned and shall not transfer or assign the Transferred Payments . . . to any other entity or person." *Id.* at 1-2. However, other sections of the Snohomish County Transfer Order refer to Rapid's "permitted assignees." *Id.* at ¶¶ 21, 23.

On November 4, 2015, Symetra Life and Symetra Assigned Benefits obtained a judgment against Rapid in the principal amount of $901,297.63 in attorneys' fees and costs (the "Rosenthal Judgment"). (*See* Instrument No. 68-4). Rapid was ordered to pay by December 3, 2015. *Id.* at 18. Rapid failed to pay.

On January 21, 2016, Symetra Life obtained a writ of execution against Rapid from the Snohomish County Court in Washington. (Instrument No. 68-5). This writ allowed Symetra Life, through a sheriff, to levy upon Rapid's rights in the Chung Payments. *Id.* Symetra Life gave notice to Rapid of the writ of execution. (Instruments No. 68-6; No. 68-7). On April 20, 2016, the sheriff sold Rapid's rights to the Chung Payments to Symetra Life for $25 at a public auction. (Instruments No. 68-8; No. 68-9).

After the sheriff's sale in Washington, Symetra Life began claiming ownership of the Chung Payments and demanded that Transamerica pay Symetra Life the Chung Payments. (Instrument No. 1 at 3-4). On April 15, 2016, A.M.Y. and FinServ demanded that Transamerica begin paying the Chung Payments to them, claiming ownership of them since the April 7, 2016,

foreclosure sale of Special-IV's interests in the Chung Payments. *Id.* at 5. Transamerica filed this interpleader action.

### 3. Related Cases

The parties have been in years-long litigation over Symetra Life's and A.M.Y.'s competing claims of ownership over structured settlement payments and Rapid's alleged alter ego relationship with other entities owned by Stewart Feldman. Below is a summary of related cases in the Southern District of Texas.

### (1) The Rosenthal Judgment

On September 9, 2005, Symetra Life and Symetra Assigned Benefits filed a Complaint against Rapid, alleging that Rapid failed to follow the Structured Settlement Protection Acts of Washington and other states when it purchased structured settlement payment rights from annuitants. (*Symetra Life Ins. Co. et al. v. Rapid Settlements, Ltd.*, No. 4:05-cv-3167 (Rosenthal, J.); Instrument No. 1). In October 2011, Symetra Life and Symetra Assigned Benefits obtained a judgment against Rapid in the amount of $98,954, which after an appeal and amended judgment in 2015 became $901,297.63. (No. 4:05-cv-3167; Instruments No. 354; No. 409). It is undisputed that Rapid has not paid the judgment.

### (2) The "Reihs Case" and Appeal

In 2012, RSL-3B filed suit against Symetra Life and Symetra Assigned Benefits. (*RSL-3B-IL, Ltd. et al. v. Symetra Life Ins. Co. & Symetra Assigned Benefits Servs. Co.*, No. 4:12-cv-2708 (Hittner, J.)). In the Third Amended Complaint, RSL-3B and A.M.Y. (a later added plaintiff) asserted that Symetra Life and Symetra Assigned Benefits wrongfully obtained a judgment against RSL-3B and Rapid in Washington State Court which "stripp[ed] them of their vested property rights in an annuity payment which was set to be paid in September 2012." (No.

4:12-cv-2708; Instrument No. 55 at 2). According to RSL-3B, Symetra Life and Symetra Assigned Benefits had engaged in a "scheme" to collect judgments from it all over the country before seeking declaratory relief in other courts to enforce those judgments. *Id.* at 9. Symetra Life and Symetra Assigned Benefits asserted that the claims of RSL-3B and A.M.Y. were barred because FinServ, A.M.Y., Rapid, and RSL-3B engaged in fraudulent transfers. (No. 4:12-cv-2708; Instrument No. 59 at 17). Symetra Life and Symetra Assigned Benefits further asserted that Rapid was an alter ego of RSL-3B and that FinServ and A.M.Y. are alter egos of RSL-3B. *Id.*

The Reihs case went to trial on October 24, 2017. (No. 4:12-cv-2708; Instrument No. 373). On October 30, 2017, the jury reached a verdict in favor of Plaintiffs FinServ and A.M.Y., finding that they did not knowingly engage in any fraudulent transfer and were not responsible for RSL-3B's conduct. (No. 4:12-cv-2708; Instrument No. 402). The court entered a final judgment on March 5, 2018, ruling that there is no alter ego relationship between (1) A.M.Y. and RSL-3B, and (2) FinServ and RSL-3B, and that A.M.Y. and FinServ have valid, attached, and perfected security interests in the annuity payments at issue in that case, the Reihs Payments and the Meza Payments. (No. 4:12-cv-2708; Instrument No. 433). Symetra Life and Symetra Assigned Benefits have appealed the final judgment in that case. (No. 4:12-cv-2708; Instrument No. 445).

### (3) The "Koehler Case"

On March 28, 2017, Plaintiffs A.M.Y. and RSL-3B LP (allegedly the successor entity of RSL-3B-IL, Ltd.) filed suit against Insurance Company of North America ("INA"), Symetra Life and Symetra Assigned Benefits. (*A.M.Y. Prop. & Cas. Ins. Corp. et al. v. Ins. Co. of N. Am. et al.*, No. 4:17-cv-0956 (Miller, J.); Instruments No. 1; No. 36 at 2 n.3). The case involves the

"Koehler," "Scott," and "Purcell" structured settlements that A.M.Y. alleges it holds an ownership interest and possessory right to. (No. 4:17-cv-0956; Instrument No. 36 at 9-10). Symetra Life and Symetra Assigned Benefits withheld the Koehler, Scott, and Purcell Payments from A.M.Y., alleging that they had a right to the payments to offset a judgment they had obtained against Rapid. (No. 17-cv-0956; Instruments No. 34 at 2; No. 43 at 5). A.M.Y. and RSL-3B LP sued for breach of contract, conversion, and wrongful offset. *Id.*

### (4) The "SLIC Case"

In a separate case filed before this Court, Plaintiffs Symetra Life and Symetra Assigned Benefits sued Defendants RSL-3B-IL, Ltd., RSL-2012-1-LP, Rapid, Stewart Feldman, Marla Matz Feldman, and IberiaBank, N.A. (*Symetra Life Ins. Co. et al. v. RSL-3B-IL, Ltd. et al.*, No. 4:16-cv-0791 (Gilmore, J.); Instrument No. 1). According to Symetra Life and Symetra Assigned Benefits, the defendants siphoned money from Rapid to avoid paying the Rosenthal Judgment and a judgment entered by the King County Superior Court of Washington against Rapid. (No. 4:16-cv-0791; Instrument No. 56 at 9-10).

## C.

Transamerica brought this interpleader case on May 20, 2016, naming as defendants Symetra Life, A.M.Y., FinServ, and Rapid. (Instrument No. 1). Transamerica filed a motion to permit deposit of interpleaded funds into the court registry on May 20, 2016. (Instrument No. 2). The Court granted that motion in part, but denied Transamerica's request for discharge from the case. (Instrument No. 13). On February 3, 2017, the Court dismissed Transamerica from the case with prejudice. (Instrument No. 20).

On September 7, 2017, A.M.Y., FinServ, and Rapid filed an Amended Answer to Transamerica's interpleader complaint which also brought cross-claims against Symetra Life and

Symetra Assigned Benefits. (Instrument No. 37). A.M.Y. brought a cause of action against Symetra Life for conversion and tortious interference with an existing contract. *Id.* at 12-13. A.M.Y. and Rapid also brought a cause of action requesting a declaratory judgment that (1) A.M.Y. held perfected secured liens in and to the Chung Payments that took priority over any claim asserted to those payments by Symetra Life or Symetra Assigned Benefits; (2) after properly foreclosing its priority security interests and purchasing the collateral at public auction with advance notice to all interested parties, A.M.Y. is the rightful owner and proper recipient of the Chung Payments; (3) neither Symetra Life nor Symetra Assigned Benefits holds any interest in and to the Chung Payments; and (4) all funds in the registry deposited by Transamerica belong to A.M.Y. *Id.* at 14-15.

On September 28, 2017, Symetra Life filed a Motion to Dismiss A.M.Y.'s and FinServ's Cross-Claims. (Instrument No. 40). On January 9, 2018, Symetra Assigned Benefits filed a 12(b)(6) Motion to Dismiss, Rule 12(b)(7) Motion to Join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd., and Jury Demand. (Instrument No. 49). A.M.Y. and Rapid filed a Response to Symetra Life's Motion to Dismiss Cross-Claims on November 10, 2017. (Instrument No. 44). On January 30, 2018, A.M.Y. filed a Response to Symetra Assigned Benefits' Motion to Dismiss and Motion for Joinder. (Instrument No. 53). Rapid joined in A.M.Y.'s Response on January 30, 2018. (Instrument No. 54).

On February 27, 2018, A.M.Y. and FinServ filed a Motion for Summary Judgment, contending that there is no genuine dispute of material fact that A.M.Y. and FinServ are the true owners of the Chung Payments. (Instrument No. 55). Symetra Life and Symetra Assigned Benefits filed their Motion for Summary Judgment on February 27, 2018. (Instrument No. 68). The parties filed responses and replies.

On April 16, 2018, this case was transferred to United States District Judge Vanessa D. Gilmore. (Instrument No. 92).

## II.

The Court must first resolve the pending Motions to Dismiss and Motion to Join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd. before turning to the summary judgment motions. Both Symetra Life and Symetra Assigned Benefits have moved to dismiss the cross-claims against them. (Instruments No. 40; No. 49). Additionally, Symetra Assigned Benefits has moved to join two additional parties as necessary parties, RSL-3B-IL, Ltd. ("RSL-3B") and RSL Special-IV, Ltd. (Special-IV). (Instrument No. 49).

### A. Motions to Dismiss the Cross-Claims

Having considered the Motions to Dismiss the Cross-Claims, all other related briefing and the arguments of counsel, the Court finds that there are too many factual issues related to A.M.Y.'s and FinServ's cross-claims that cannot be resolved at the motion to dismiss stage. Moreover, because the case was transferred to this Court with both pending motions to dismiss and pending motions for summary judgment, the Court has before it information from which it can make a determination on the merits of the case and not on the complaint alone.

Accordingly, the Court finds that Symetra Life's Motion to Dismiss, (Instrument No. 40), and Symetra Assigned Benefits' Motion to Dismiss, (Instrument No. 49), are DENIED as moot.

### B. Motion to Join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd.

Symetra Assigned Benefits has also moved to join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd. as necessary and indispensable parties pursuant to Federal Rule of Civil Procedure 19(a)(1). (Instrument No. 49 at 10). Alternatively, Symetra Assigned Benefits moves to dismiss the suit pursuant to Rule 12(b)(7) for failure to join a necessary party. *Id.*

11

Rule 19(a)(1) states:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

"[T]he party advocating joinder has the initial burden [to demonstrate] that a missing party is necessary." *Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). This burden is met if "an initial appraisal of the facts indicates that a possibly necessary party is absent." *Id.* (internal quotation omitted). At that point, "the burden of disputing this initial appraisal falls on the party who opposes joinder." *Id.*; *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309-10 (5th Cir. 1986).

Symetra Assigned Benefits contends that RSL-3B and Special-IV are necessary for the Court to accord complete relief among the existing parties. (Instrument No. 49 at 11). Symetra Assigned Benefits further contends that each and every cross-claim that A.M.Y. and Rapid have brought requires a determination of who among the parties to the suit holds the right and title to the Chung Payments. *Id.* Symetra Assigned Benefits requests that this Court stay the case until RSL-3B and Special-IV are served and, if they cannot be served, to dismiss the case for failure to join a necessary party. *Id.* at 11-13.

A.M.Y. and FinServ contend that RSL-3B and Special-IV are not required parties because they do not claim ownership rights in the Chung Payments. (Instruments No. 53 at 7; No. 54). A.M.Y. also notes that RSL-3B and Special-IV "can easily be joined in the event the Court determines they are required parties under Rule 19(a)(1)." (Instrument No. 53 at 8 n.28).

12

The Court notes that none of the parties have provided the Court with any information about the status of RSL-3B or Special-IV, including whether or not these entities are dissolved. The Court takes judicial notice of the documents that RSL-3B and Special-IV filed with the Texas Secretary of State showing that those entities filed certificates of termination as far back as 2014. (*See* Certificate of Termination of RSL-3B-IL, Ltd. a Texas Limited Partnership, filed Jan. 29, 2014; Certificate of Termination of RSL Special-IV, Ltd. a Texas Limited Partnership, filed Apr. 10, 2014, *available at* https://www.sos.state.tx.us/corp/sosda/index.shtml).[1] The Court has insufficient information before it to determine if RSL-3B or Special-IV can be served with process or whether RSL-3B or Special-IV reincorporated in a different state. Moreover, Symetra Assigned Benefits has requested a stay of the case until these parties have been served and, if they cannot be joined, for dismissal of this case. (Instrument No. 49 at 12-13). The status of RSL-3B and Special-IV is important given that Symetra Assigned Benefits might seek to dismiss the case on this procedural issue and Symetra Assigned Benefits has conveniently remained silent about the likelihood of serving them. The Court cannot resolve these issues unless it has more information from the parties about the status of RSL-3B and Special-IV.

Accordingly, the Court finds that Symetra Assigned Benefits' Motion to Join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd. is DENIED without prejudice to reurging. (Instrument No. 49).

**III.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] Matters of which a court may take judicial notice include, for example, matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).

13

of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 312, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-25). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary

14

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am.'s Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *E.E.O.C. v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 612 n.3 (5th Cir. 2009). Nor does the court "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas*, 136 F.3d at 458; *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

When the parties cross-move for summary judgment, the court must review "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## IV.

A.M.Y. seeks summary judgment rulings that A.M.Y. and FinServ are the true owners of the Chung Payments, arguing that (1) there is no genuine dispute of material fact that A.M.Y. and FinServ have prior, perfected security interests in the Chung Payments; (2) A.M.Y. and FinServ properly foreclosed on and became the owners of the Chung Payments; (3) Symetra's defenses raising the anti-assignment clause in the Snohomish County Transfer Order, commercial reasonableness, fraudulent transfer, and alter ego all fail as a matter of law. (Instrument No. 55 at 11).[2]

Symetra seeks a summary judgment ruling that (1) Symetra Life acquired as a matter of law the right, title, and interest to the Chung Payments, which it purchased at a sheriff's sale pursuant to a Benton County, Washington writ of execution; (2) A.M.Y.'s and Rapid's cross-claims for conversion, tortious interference with existing contract and declaratory judgment against Symetra fail as a matter of law because Symetra Life exercised no dominion or control over the Chung Payments, and no valid contract exists with which Symetra Life could interfere; and (3) A.M.Y. and Rapid's declaratory judgment action adds nothing to the interpleader action. (Instrument No. 68 at 2).

---

[2] Because Symetra Life and Symetra Assigned Benefits have filed their motions for summary judgment and responses collectively, the Court will refer to both parties collectively as "Symetra" except where it is necessary to distinguish the two entities. Similarly, because A.M.Y. and FinServ merged in January 2017, and A.M.Y. is the successor to both company's security interests, the Court will refer to A.M.Y. and FinServ collectively as simply "A.M.Y." except where it is necessary to distinguish between the two entities.

**A. Rightful Claim to the Chung Payments**

The parties have filed cross-motions for summary judgment on the issue of who is the rightful owner of the Chung Payments. A.M.Y. contends that A.M.Y. is the rightful owner of the Chung Payments because A.M.Y.'s security interests attached to the Chung Payments in 2003 when A.M.Y. entered into the loan agreement with Rapid. (Instrument No. 55 at 11-12). A.M.Y. further contends that when Rapid obtained the Chung Payments in 2007, the understanding between Rapid, Chung, and Transamerica was that Rapid was acting as Special-IV's agent and would forward each of the Chung Payments to Special-IV. *Id.* at 8. A.M.Y. asserts that regardless of whether Rapid or Special-IV owned the Chung Payments, A.M.Y. and FinServ have perfected security interests in the Chung Payments because A.M.Y. and FinServ became the owners of the Chung Payments when they foreclosed on Rapid's assets in December 2008 and/or when they foreclosed on Special-IV's assets in April 2016. *Id.* at 10-11.

Symetra contends that at the time Symetra Life bought the rights to the Chung Payments at the sheriff's sale, Rapid still owned the Chung Payments because Rapid warranted in the Snohomish County Transfer Order that it would not assign the Chung Payments. (Instrument No. 68 at 12). Symetra also contends that because the Washington State court signed the Snohomish County Transfer Order based in part on Rapid's warranty that it would not assign the Chung Payments to anyone else, Rapid should be judicially estopped from asserting that any other person or entity acquired any interest in or to the Chung Payments and that the Full Faith and Credit Clause of the United States Constitution bars this Court from contravening the Snohomish County Transfer Order and finding that Rapid could assign the Chung Payments to Special-IV. *Id.* at 14-15.

17

In the alternative to Symetra's arguments for summary judgment as to Symetra Life's claim to the Chung Payments, Symetra contends that there is no evidence of the actual assignment of the Chung Payments from Rapid to Special-IV. (Instrument No. 86 at 15-16). Symetra also asserts that the 2016 foreclose on Special-IV and the 2008 foreclosure on Rapid were fraudulent and that A.M.Y. and FinServ are alter egos of Rapid. *Id.* at 17-20, 29-37.

### 1. Creation of Security Interests Held by A.M.Y. and FinServ

To determine if A.M.Y. has a perfected security interest and properly foreclosed on that interest, the Court must first look to the loan agreements between A.M.Y. and Rapid.

A security interest is an interest in personal property or fixtures which secures payment or performance of an obligation. Tex. Bus. & Com. Code § 1.201(35). To enforce a security interest against other creditors and in bankruptcy, the security interest must be properly created and perfected. Generally, a security interest is created when three requirements are met: (1) value has been given; (2) the debtor must have rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. § 9.203(b); *In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 159 (Bankr. N.D. Tex. 2014). The security agreement must describe the collateral to enable the debtor and other interested persons to identify the property that the creditor may claim as security. *Carmel Fin. Corp. v. Castro*, 514 S.W.3d 291, 296 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); § 9.108(a). Although a description of collateral such as "all the debtor's assets" or "all the debtor's personal property" is insufficient, a description of collateral that uses "general intangible" is sufficient under Texas law. *In re ProvideRx of Grapevine, LLC*, 507 B.R. at 162 ("The term 'general intangibles' in a secured transaction acts as a 'catch-all' and brings under Article 9 miscellaneous types of contractual rights and other personal property that are

used or normally may be used as commercial security."); *In re Barr*, 180 B.R. 156, 158-59 (Bankr. N.D. Tex. 1995). "General intangibles" includes "payment intangibles." § 9.102(42). The Fifth Circuit has found that an annuity contract falls under the definition of general intangibles. *In re Newman*, 993 F.2d 90, 95 (5th Cir. 1993).

A.M.Y. entered into two loan agreements: the October 2003 loan agreement between A.M.Y., the Feldman Law Firm LLP, RSL-3B, and Rapid, (Instrument No. 55-13), and the January 2005 loan agreement between A.M.Y., the Feldman Law Firm LLP, RSL-3B, Rapid, and Special-IV. (Instrument No. 55-15). The only relevant difference between the two loan agreements is that the 2005 loan agreement adds Special-IV as an additional borrower. *Id.* at 1. Under the agreements, A.M.Y. agreed to act as a lender to the other parties in exchange for a first and prior lien and security interest in the borrowers' now-owned or later-acquired property and collateral. (Instruments No. 55-13 at 6, ¶ 3.1; No. 55-15 at 7 ¶ 3.1). Among the definitions for "collateral" in the loan agreements are "all General Intangibles," which includes "payment intangibles." (Instruments No. 55-13 at 6, ¶ 3.1(d); No. 55-15 at 7 ¶ 3.1(d)). Since the Chung Payments are annuity payments, they would fall under the definition of "General Intangibles" and are adequately described in the loan agreements.

Filing a financial statement, known as a UCC-1 form, can perfect a security interest. Tex. Bus. & Com. Code § 9.312(a); *In re ProvideRx*, 507 B.R. at 162-63. A financing statement sufficiently describes the collateral that it covers if it provides either a description of the collateral pursuant to § 9.108 or an indication that the financing statement covers all assets or all personal property. *In re ProvideRx*, 507 B.R. at 163.

A.M.Y. filed a UCC-1 financing statement to perfect its security interest against Rapid on March 1, 2004. (Instrument No. 55-14). A.M.Y. filed a UCC-1 financing statement to perfect its security interest against Special-IV on August 10, 2007. (Instruments No. 55-19; No. 55-20).

On January 1, 2007, A.M.Y. entered into a participation agreement with FinServ to assign a prorated portion of its security interests in Rapid's and Special-IV's assets to FinServ in exchange for FinServ's agreement to provide financing to Rapid and Special-IV. (Instruments No. 55-17; No. 55-18). FinServ filed UCC-1 financing statements to perfect its security interests against Rapid and Special-IV on August 8, 2008. (Instruments No. 55-20). It is undisputed that A.M.Y. and FinServ have always maintained UCC-1 financing statements covering Rapid's and Special-IV's assets. (*See* Instrument No. 55-21).

Because A.M.Y. and FinServ meet the statutory requirements for creating and perfecting a security interest, the Court finds that both A.M.Y. and FinServ have perfected security interests in the assets of Rapid and Special-IV.

"The general rule of priority among conflicting security interests in the same collateral where both interests are perfected by filing, is that the secured party who first files a financing statement prevails." *Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank*, 784 S.W.2d 129, 133 (Tex.App.—Amarillo 1990, writ denied). Although Symetra Life contends that it obtained Rapid's right, title, and interest in the Chung Payments through the sheriff's sale on April 20, 2016, A.M.Y.'s and FinServ's perfected security interests in the Chung Payments pre-date Symetra's lien. The parties dispute when or whether Rapid transferred its rights in the Chung Payments to Special-IV. However, the Court need not resolve this issue because regardless of whether Rapid or Special-IV owned the rights to the Chung Payments, A.M.Y. and FinServ had attached, perfected, prior security interests in the Chung Payments that pre-date Symetra Life's

lien. *See* Tex. Bus. & Com. Code §§ 9.317(a)(2), 9.322(a). Allegedly to protect their security interests in Rapid's and Special-IV's collateral, A.M.Y. and FinServ foreclosed on Rapid's assets in 2008 and on Special-IV's assets on April 7, 2016, a few weeks before Symetra Life bought Rapid's rights to the Chung Payments in the sheriff's sale on April 20, 2016. Therefore, the Court finds that A.M.Y. and FinServ are the owners of the Chung Payments.

### 2. Symetra's Affirmative Defenses

Symetra has also raised affirmative defenses to void A.M.Y.'s and FinServ's perfected security interests. Symetra contends that A.M.Y., FinServ, Special-IV, Rapid, and RSL-3B are alter egos of each other and engaged in fraudulent transfers to prevent Symetra from recovering on the Rosenthal Judgment. Symetra further contends that the Snohomish County Transfer Order had an anti-assignment provision that renders Rapid's transfer of the Chung Payments to Special-IV ineffective. Symetra also contends that judicial estoppel and the Full Faith and Credit Clause should bar Rapid from now claiming that it always intended to assign its rights to the Chung Payments to Special-IV.

### a. Fraudulent Transfer

Symetra contends that there are material issues of fact regarding whether any transfer of the Chung Payments to Special-IV and whether the 2016 foreclosure on Special-IV's assets were fraudulent transfers. (Instrument No. 86 at 17). A.M.Y. contends that Symetra's defense is barred by *res judicata* and collateral estoppel because Symetra raised these exact issues in the Reihs case where the jury found against Symetra. A.M.Y. further contends that the four-year statute of repose for a claim of fraudulent transfer under Texas law bars Symetra Life's affirmative defense.

"A fraudulent transfer is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach." *Hahn v. Love*, 321 S.W.3d 517, 524 (Tex.App.—Houston [1st Dist.] 2009, pet. denied); Tex. Bus. & Com. Code § 24.005(a)(1). Section 24.010 of the Texas Business and Commerce Code, also known as the Texas Fraudulent Transfer Act ("TUFTA"), requires that parties bring fraudulent transfer claims "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Tex. Bus. & Com. Code § 24.010(a)(1). Texas courts have held that Section 24.010 is a statute of repose and cannot therefore be tolled by a court. *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 676 (S.D. Tex. 2007) (Rosenthal, J.).

The Court need not rule on whether TUFTA's four-year statute of limitations applies here because claim preclusion bars Symetra's defenses of fraudulent transfer and alter ego.

"Claim preclusion, or *res judicata*, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). The parties need not have actually litigated the claim for claim preclusion to still apply. *See Crawford v. San Marcos Consol. Indep. Sch. Dist.*, 637 F. App'x 808, 812 (5th Cir. 2016) ("Claim preclusion forecloses any litigation of matters that have never been litigated on the ground that they should have been advanced in an earlier suit." (internal quotation omitted)).

The test for claim preclusion has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). The Fifth Circuit applies the "transactional test" to determine whether two suits

22

involve the same claims or causes of action. *Id.* Under the transactional test, the critical issue is whether the prior suit and the current suit are based on the "same nucleus of operative facts. *Id.* (quoting *In re Southmark*, 163 F.3d at 934). If the prior and current suits involve the same transaction or series of connected transactions, the two suits involve the same claims or causes of action. *Id.* Courts should consider whether the facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 396 (quoting Restatement (Second) of Judgments § 24). "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

Regarding the defenses raised against Rapid, Symetra Life has alleged that A.M.Y. and FinServ are alter egos of Rapid and that Rapid, FinServ and A.M.Y. engaged in fraudulent transfers. (Instrument No. 8). It is undisputed that the parties in this case are the same as those in the Reihs case. The District Court for the Southern District of Texas entered a final judgment in that case on March 5, 2018. (No. 4:12-cv-2708; Instrument No. 433). The final judgment, which was entered in accordance with the jury verdict, found that, as a matter of law, A.M.Y. and FinServ have valid, attached, and perfected security interests in the annuity payments at issue in that case. *Id.* The final judgment further ordered that A.M.Y.'s and FinServ's security interests in RSL-3B's property were not fraudulent transfers and that there is no alter ego relationship between either (1) A.M.Y. and 3B, or (2) FinServ and 3B. *Id.* Therefore, the first three elements of claim preclusion are met.

Symetra also presents the exact same claims of alter ego and fraudulent transfer that it presented in the Reihs case. The loan documents that A.M.Y. and FinServ presented to support

its assertion that they had prior, perfected security interests in the assets of both Rapid and RSL-3B are the exact same. (No. 12-cv-2708; Instrument No. 117 at 4-6). Although the questions of alter ego and fraudulent transfer related to *Rapid* were never presented to the jury in that case, Symetra Life litigated these exact issues before that court. (No. 12-cv-2708; Instrument No. 32 (Symetra's Second Amended Answer)). For instance, Symetra Life and Symetra Assigned Benefits referred to RSL-3B and Rapid collectively as "Rapid Settlements, Ltd./RSL-3B-IL, Ltd.," or as "RSL" in their pretrial motions and asserted that a Washington trial court had already found that RSL-3B and Rapid were alter egos. (No. 12-cv-2708; Instruments No. 60 at 6; No. 69 at 2 n.2; No. 78). Moreover, during closing arguments in the Reihs case, counsel for Symetra asserted that A.M.Y. and Rapid are alter egos:

> Mr. Feldman controls Rapid. Rapid—he also controls A.M.Y. And he testifies that the lenders was [sic] going to go after the assets of Rapid. Well, he is the lender. He controls A.M.Y. He controls Rapid. He could make a decision not to foreclose at any moment in time with respect to Rapid. He chooses not—he chooses to do it, because there's an effect for him. He gets—A.M.Y. gets to stand in the shoes of Rapid in that context.
>
> So, when you hear, well, 3B is over here and Rapid is over here and A.M.Y. is over here, you have to keep in your mind that Mr. Feldman controls all these entities.

(No. 4:12-cv-2708; Instrument No. 430 at 51:4-14).

Claim preclusion serves to bar not just claims that were actually litigated in a previous case, but also those that "should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d at 934. Symetra already litigated the alter ego and fraudulent transfer defenses related to Rapid in the Reihs case. That Symetra did not obtain a specific jury finding on whether Rapid is an alter ego of A.M.Y. or FinServ does not prevent claim preclusion from applying in this case. Because Symetra Life and Symetra Assigned Benefits had the opportunity to fully and fairly

litigate this issue in federal court, the alter ego and fraudulent transfer defenses are barred by claim preclusion.

Regarding the defenses raised against Special-IV, Symetra's Response to A.M.Y.'s Motion for Summary Judgment now alleges that their fraudulent transfer claim is also based on the purported 2007 transfer of the Chung Payments from Rapid to Special-IV, and A.M.Y.'s and FinServ's April 2016 foreclosure on Special-IV's assets. (Instrument No. 86 at 23). Special-IV was not a party in the Reihs case, and Special-IV's ownership of the Chung Payments was not an issue before the court in the Reihs case. Claim preclusion would therefore not apply to the defenses raised against Special-IV. However, neither Symetra Life nor Symetra Assigned Benefits pleaded fraudulent transfer and alter ego affirmative defenses against Special-IV. (*See* Instrument No. 8). Symetra Life's Answer to Transamerica's Interpleader Complaint does not even mention Special-IV. *See id.* Special-IV is not a party to this case and, as the Court previously discussed, may not be a party that can be added, since public documents suggest Special-IV is a dissolved entity. *See* Section II.B.

Accordingly, the Court finds that claim preclusion bars Symetra Life and Symetra Assigned Benefits from relitigating their defenses of alter ego and fraudulent transfer as to Rapid only.

### b. The Chung Anti-Assignment Provision

Symetra also contends that the Snohomish County Transfer Order contained an anti-assignment provision that prevented Rapid from assigning its rights to the Chung Payments to anyone else. (Instrument No. 86 at 12-13).

Prudential standing generally requires a plaintiff to assert his own legal rights and interests, and not to rest its claim to relief on the legal rights or interests of third parties. *Warth v.*

*Seldin*, 422 U.S. 490, 499 (1975). "[A]n agreed judgment should be construed in the same manner as a contract." *Duque v. Wells Fargo, N.A.*, 462 S.W.3d 542, 547 (Tex.App.—Houston [1st Dist.] 2015, no pet.)). Generally, only parties to a contract may sue to enforce the rights provided in the four corners of the agreement, unless the contract was made for the benefit of the person seeking to enforce the contract. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000); *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) ("First, there is a presumption against conferring third-party-beneficiary status on noncontracting parties."); *MCI Telecomm'ns Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *Optimus Indus. LLC v. Factory Mut. Ins. Co.*, No. 3:15-cv-05149-RJB, 2015 WL 3796953, at *2 (W.D. Wash. June 8, 2015) (same under Washington law). Neither Symetra Life nor Symetra Assigned Benefits was a party or third-party beneficiary to the Snohomish County Transfer Order, and the agreement between Rapid and Chung occurred nearly ten years before Symetra Life obtained the rights to the Chung Payments in the sheriff's sale. Symetra Life and Symetra Assigned Benefits therefore have no standing to assert the anti-assignment provision.

### c. Commercial Reasonableness

Symetra also contends that A.M.Y.'s acquisition of the Chung Payments was not commercially reasonable. (Instrument No. 86 at 17, 35 n.17).

After default by the debtor, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral. Tex. Bus. & Com. Code § 9.610(a). Every aspect of a disposition of collateral must be commercially reasonable. § 9.610(b). "A secured party sells collateral in a commercially reasonable manner if it sells the collateral (1) in the usual manner in any recognized market; (2) at the price current in the market at the time of the sale; or (3) in conformity with reasonable commercial practices among dealers in the type of property sold."

26

*Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 450 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). "When collateral is sold in a commercially unreasonable manner, including if there are deficiencies in notice, the debtor may recover damages or obtain protection from a deficiency judgment, but may not rescind the sale that has been made." *In re ProvideRx of Grapevine, LLC*, 507 B.R. 132, 166 (Bankr. N.D. Tex. 2014).

To prevail on a defense of commercial reasonableness, however, a party must have standing. For a third party, like Symetra Life or Symetra Assigned Benefits, to establish standing, the third party must show that it had an interest in the property that will be affected by the sale or disposition. *Kiper v. BAC Home Loans Serv., LP*, 884 F. Supp. 2d 561, 576 (S.D. Tex. 2012) (Harmon, J.); *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988).

Symetra Life and Symetra Assigned Benefits obtained the Rosenthal Judgment in 2011. If Rapid still owned the Chung Payments in December 2008 when A.M.Y. and FinServ foreclosed on all of Rapid's assets, then Symetra had no valid interest in the Chung Payments at that time. After December 2008, A.M.Y. and FinServ owned all of Rapid's assets. Similarly, if Special-IV owned the Chung Payments, then, Symetra had no valid interest in the Chung Payments because Symetra has not presented evidence of a judgment against Special-IV or a right to Special-IV's rights to the Chung Payments. It is not necessary for a factfinder to determine whether or when Rapid assigned its rights to the Chung Payments to Special-IV. Regardless of whether Rapid or Special-IV owned the Chung Payments, A.M.Y. and FinServ foreclosed on their security interests before Symetra Life purchased Rapid's rights in the Chung Payments. Under either scenario, Symetra Life and Symetra Assigned Benefits lack standing as a matter of law to raise the defense of commercial reasonableness because they had no interest in the Chung Payments when the foreclosures occurred.

**d. Judicial Estoppel & Full Faith and Credit Clause**

Symetra further contends that Rapid should be estopped from arguing that it could assign the Chung Payments to Special-IV and that the Court should find that the Full Faith and Credit Clause of the United States Constitution prevents Rapid from relitigating the merits of the Snohomish County Transfer Order. *Id.* at 14.

Because Symetra does not have standing to assert the alleged anti-assignment provision in the Snohomish County Transfer Order, the Court need not consider whether the Snohomish County Transfer Order prohibits Rapid's assignment of the Chung Payments to Special-IV. Therefore, this Court finds that judicial estoppel does not apply here. Moreover, because Symetra lacks standing to enforce the alleged anti-assignment provision, Symetra cannot argue that the Full Faith and Credit Clause applies.

Accordingly, the Court finds that A.M.Y.'s Motion for Summary Judgment is GRANTED. (Instrument No. 55). Symetra's Motion for Summary Judgment is DENIED. (Instrument No. 68).

**V.**

Symetra has moved for summary judgment on the cross-claims brought by A.M.Y. and FinServ. (Instrument 68). Symetra seeks dismissal of A.M.Y.'s cross-claims of conversion, tortious interference with existing contract, and A.M.Y. and FinServ's declaratory judgment claim. *Id.*

**A. Conversion**

Symetra seeks summary judgment on A.M.Y.'s cross-claim of conversion. (Instrument No. 68 at 17). Symetra contends that neither Symetra Life's pursuit of a writ of execution and sheriff's sale to obtain the Chung Payments, nor its claim to the Chung Payments constitutes

"control" over the Chung Payments as required for a claim of conversion. *Id.* at 17-18. Symetra further alleges that because it obtained a writ of execution, it's conduct was lawful and cannot support a claim of conversion. *Id.* at 18-19.

"Conversion is defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997). To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex.App.—Houston [1st Dist.] 2006, no pet.).

Symetra Life did not need to have physical possession over the Chung Payments for a claim of conversion to arise. An act of conversion also includes "an act that is such active interference with the owner's right of property or control as to deprive him of its free use and enjoyment." *Pierson v. GFH Fin. Servs. Corp.*, 829 S.W.2d 311, 314 (Tex.App.—Austin 1992, no writ). A.M.Y. alleges, and the undisputed facts show, that Symetra Life purchased Rapid's rights to the Chung Payments in a sheriff's sale and demanded Transamerica to send the Chung Payments to Symetra Life. (Instrument No. 37). Transamerica deposited the Chung Payments in this Court's registry, instead of sending them to A.M.Y., and filed this interpleader action in response to Symetra's and A.M.Y's competing claims to the Chung Payments. A factfinder could determine that Symetra Life's conduct constituted an unlawful and unauthorized exercise of control over A.M.Y.'s property.

Moreover, because A.M.Y. has alleged that Symetra Life improperly obtained the writ of execution by failing to disclose material facts about Rapid's assets to the Snohomish County court or to the sheriff, Symetra's argument that it cannot be liable for conversion because it acted pursuant to the writ of execution must fail.

Accordingly, the Court finds that Symetra's Motion for Summary Judgment on A.M.Y.'s cross-claim of conversion is DENIED. (Instrument No. 68).

**B. Tortious Interference with Existing Contract**

Symetra also moves for summary judgment on A.M.Y.'s cross-claim of tortious interference with existing contract because Symetra claims that there is no valid contract between A.M.Y. and Transamerica, or A.M.Y. and Chung. (Instrument No. 68 at 19).

To recover under Texas law for tortious interference with a contract the plaintiff must show (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused the plaintiff damage; and (4) that actual damage or loss occurred. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

The January 31, 1986, settlement agreement between Chung and Transamerica was a contract whereby Transamerica agreed to pay Chung the annuity payments to discharge any claims Chung might have had against a third party. (*See* Instrument No. 68-15). "In general, Texas law treats a settlement agreement as a contract." *Dunbar Med. Sys. Inc. v. Gammex Inc.*, 216 F.3d 441, 452 (5th Cir. 2000). The Snohomish County Transfer Order, which transferred the Chung Payments to Rapid, became a part of the terms of the structured settlement agreement. *Metro. Life Ins. Co. v. Structured Asset Funding, LLC*, 501 S.W.3d 706, 711 (Tex.App.— Houston [14th Dist.] 2016, no pet.). Moreover, a contractual right to receive a future stream of

payments is typically assignable. *Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010). An assignee steps into the shoes of the assignor and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue a claim for injury. *Id.* A.M.Y. obtained the contractual right to the Chung Payments when it foreclosed on the assets of Rapid and Special-IV.

Furthermore, because A.M.Y. alleges that Symetra Life improperly obtained the writ of execution, A.M.Y. has properly alleged that Symetra Life interfered with A.M.Y.'s contractual rights to the Chung Payments.

Accordingly, the Court finds that Symetra's Motion for Summary Judgment on A.M.Y.'s cross-claim of tortious interference with existing contract is DENIED. (Instrument No. 68).

### C. Declaratory Judgment Claim

Symetra further moves for summary judgment on the declaratory judgment claim brought by A.M.Y. and Rapid. (Instrument No. 68 at 21-23). Symetra contends that the declaratory judgment action is superfluous and will not serve any useful purpose in clarifying and settling the legal relations in issue. *Id.* at 22. A.M.Y. and Rapid contend that the declaratory judgment claim joins Symetra Assigned Benefits and that without a declaration regarding A.M.Y.'s priority rights to the Chung Payments over both Symetra entities, there will be future litigation over the Chung Payments. (Instruments No. 76 at 34; No. 85 at 2).

Courts have broad discretion in determining whether to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The two principle factors in favor of rendering declaratory judgments are: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Concise Oil &*

*Gas P'ship v. La. Interstate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993). Courts in the Fifth Circuit regularly dismiss a declaratory judgment claim if it adds nothing to an existing suit. *See Am. Equip. Co. v. Turner Bro. Crane & Rigging LLC*, No. 4:13-cv-2011, 2014 WL 3543720 at *3-4 (S.D. Tex. July 14, 2014) (Harmon, J.) (examining cases in the Fifth Circuit where courts have dismissed a declaratory judgment claim that had the same effect as the existing suit).

The interpleader case before this Court relates only to the ownership of the Chung Payments. By contrast, the scope of the declaratory judgment A.M.Y. and Rapid seek covers security interests in assets including, but not limited to, the Chung Payments. The parties have engaged in extensive litigation through the years over other sets of annuity payments that A.M.Y. claims to own through prior perfected security interests. The current case is just one of other cases in the Southern District of Texas. The Court believes that hearing the declaratory judgment claim will serve judicial efficiency because the declaratory judgment will resolve any future disputes Symetra Life, Symetra Assigned Benefits, A.M.Y., and Rapid may have over other assets that Symetra claims belonged to Rapid.

Accordingly, the Court finds that Symetra's Motion for Summary Judgment on the declaratory judgment claim brought by A.M.Y. and Rapid is DENIED. (Instrument No. 68).

## VI.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Symetra Life's Motion to Dismiss Cross-Claims is **DENIED**, **(Instrument No. 40)**, and Symetra Assigned Benefits' Motion to Dismiss Cross-Claims is **DENIED**. **(Instrument No. 49)**. Symetra Assigned Benefits' Motion to Join RSL-3B-IL, Ltd. and RSL Special-IV, Ltd. is **DENIED** without prejudice to reurging. **(Instrument No. 49)**.

**IT IS FURTHER ORDERED** that A.M.Y.'s Motion for Summary Judgment is **GRANTED**. **(Instrument No. 55)**. Symetra's Motion for Summary Judgment is **DENIED**. **(Instrument No. 68)**.

The Clerk shall enter this Order and provide a copy to all parties.

**SIGNED** on this the ⎯⎯ day of September, 2018, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**